UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MY PILLOW, INC.,
a Minnesota Corporation,

   Plaintiff,       Case No. 0:18-cv-00196-WMW-SER

v.

LMP WORLDWIDE, INC.,
a Michigan corporation,

   Defendant.

---

## MEMORANDUM OF LAW SUPPORTING DEFENDANT'S MOTION TO TRANSFER

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

    I.      THE PARTIES, THEIR TRADEMARKS AND THE MICHIGAN
            ACTION. ................................................................................................ 2

    II.     THE PARTIES NEGOTIATE AND ENTER THE COEXISTENCE
            AGREEMENT IN MICHIGAN AND CHOOSE MICHIGAN LAW
            AS THE  LAW GOVERNING THE COEXISTENCE
            AGREEMENT. ........................................................................................ 4

    III.    PLAINTIFF MANUFACTURES AN EXCUSE TO AVOID THE
            COEXISTENCE AGREEMENT AND THE NECESSITY OF
            COMPETING  WITH LMP ON THE MERITS. ........................................ 6

LEGAL STANDARD ......................................................................................... 7

ARGUMENT ....................................................................................................... 8

    I.      THE EASTERN DISTRICT OF MICHIGAN IS A PROPER
            VENUE AND  ALREADY HAS A SUBSTANTIAL
            CONNECTION TO THIS CASE. ............................................................ 8

    II.     THE EASTERN DISTRICT OF MICHIGAN IS A FAR MORE
            CONVENIENT FORUM THAN THE DISTRICT OF
            MINNESOTA. ...................................................................................... 10

          A.      The Convenience of the Parties favors Transfer to Michigan. ....... 10

          B.      The Convenience of the Witnesses Heavily Favors Transfer
               to Michigan. .................................................................................... 13

          C.      The Accessibility to Records and Documents Supports
               Transfer to Michigan. ..................................................................... 18

          D.      The Location Where the Conduct Complained of Occurred
               Weighs in Favor  of Transfer to Michigan. .................................... 19

          E.      The Applicability of Each State's Forum Law Strongly
               Supports Transfer to  Michigan. ...................................................... 20

    III.    THE INTERESTS OF JUSTICE WEIGH DECIDEDLY IN FAVOR
            OF  TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN. ...... 22

          A.      The Advantages of Having a Local Court Determine
               Questions of Local Law. ................................................................. 23

## TABLE OF CONTENTS
(continued)

|  |  |  | Page |
|---|---|---|---|
| B. | The Comparative Costs to the Parties of Litigating in Each Forum. | | 24 |
| C. | Transferring this Case to Michigan would Advance Judicial Economy. | | 25 |
| D. | Plaintiff's Choice of Forum Should Not Be Given Significant Deference. | | 26 |
| CONCLUSION | | | 27 |

## **INTRODUCTION**

At the heart of this case is a Coexistence Agreement that the parties, with the integral assistance of a federal magistrate judge, negotiated and executed to resolve a trademark infringement suit that Plaintiff filed in the Eastern District of Michigan (the "Michigan Action"). As Plaintiff alleged then, the Eastern District of Michigan was a proper venue. Nothing has changed. The marks covered by the Coexistence Agreement are the same marks that are at issue in this case. Defendant LMP Worldwide, Inc. ("LMP") is still a small operation, comprised of seven employees, located in Milford, Michigan. Plaintiff is still represented by the same counsel in the Eastern District of Michigan. And most importantly, the Eastern District of Michigan is still the most convenient forum to litigate disputes regarding the Coexistence Agreement.

What has changed, however, is Plaintiff's happiness with the Coexistence Agreement itself, which Plaintiff sees as an obstacle to its plan to squash a smaller competitor by claiming trademark infringement and cancelling the competitor's trademark. So Plaintiff has concocted an excuse to try and invalidate the Coexistence Agreement and sued LMP for trademark infringement, false advertising and unfair competition. Plaintiff avoided the court in which the Coexistence Agreement was negotiated and brokered and instead filed suit nearly 700 miles away, thereby maximizing financial burden on LMP. Through this motion, LMP seeks to transfer this action to the Eastern District of Michigan, the more convenient venue for the parties and witnesses, and the court most readily equipped to interpret and enforce the Coexistence Agreement that it helped the parties negotiate.

## STATEMENT OF FACTS

## I.   THE PARTIES, THEIR TRADEMARKS AND THE MICHIGAN ACTION.

Plaintiff My Pillow, Inc., is a Minnesota corporation with its principal place of business in Chaska, Minnesota. (Dkt. #1, ¶ 10).  Founded in the early 2000s, Plaintiff has expanded rapidly, now employing over 1500 people with seven retail outlets across the Midwest.[1]  Plaintiff owns the alleged trademark "MYPILLOW," which it asserts was first used in October 2004 and which was registered on April 8, 2008. (*Id.*, ¶¶ 7-8).

According to Plaintiff, it "spends over $4,000,000 a month advertising its products sold under the trademark MYPILLOW."  (*Id.*, ¶ 10).  Not surprisingly, these products include pillows.  Starting in 2011, Plaintiff promoted its products with a television infomercial, which airs regularly and features Plaintiff's founder, Mike Lindell.[2]  As of 2012, Plaintiff also promoted its products across the country at over 70 home shows, fairs and military bases per week.[3]  And, in addition to filming and starring in Plaintiff's various infomercials, Mr. Lindell has promoted Plaintiff's products through personal appearances on numerous local and national radio shows, including the Don Imus show, and even at a "Made in America" round table with President Trump.[4]

---

[1] *See* https://www.mypillow.com/mikes-story/ (last visited Feb. 8, 2018).

[2] *See id.*

[3] *See id.*

[4] *See id*; *see also* http://www.foxnews.com/opinion/2017/07/24/mike-lindell-heres-why-made-in-america-really-will-help-make-america-great-again.html (last visited Feb. 8, 2018).

Defendant LMP Worldwide, Inc. ("LMP") is a small company based in Milford, Michigan. (Ex. 1,[5] Arthurs Decl. ¶ 3). It owns the trademark "I ♥ My Pillow®", United tates Reg. No. 3,492,178, referred to herein as LMP's trademark or mark. (*Id.*, ¶ 4). LMP sells a line of specially designed memory foam pillows. (*Id.*, ¶ 3). LMP has seven employees, all located in Milford, Michigan, where it also designs and manufactures its products. (*Id.*, ¶ 7). Three of LMP's employees are responsible for actual production, while the rest play multiple critical roles in the company. (*Id.*). For instance, LMP's employee responsible for purchasing online ad words and maintaining its website is also LMP's plant manager (*id.*, ¶ 9), and LMP's employee responsible for small-company sales is also in charge of customer service (*id.*, ¶ 10). Needless to say, LMP is a local company, but it has been successful enough to draw the ire of its much larger competitor.

In 2012, Plaintiff sued LMP in the Eastern District of Michigan (the "Michigan Action"). The case, *My Pillow, Inc. v. LMP Worldwide, Inc.*, Case No. 12-cv-10299 (E.D. Mich. 2012), was assigned to Judge Paul D. Borman and Magistrate Laurie J. Michelson.[6] The complaint alleged that LMP's use of its trademark infringed the MYPILLOW mark and asserted claims for trademark infringement, false designation of origin and false advertising, common-law trademark infringement, and cancellation of LMP's trademark. (Ex. 2, Michigan Complaint). In addition, Plaintiff's complaint in the Michigan Action asserted that venue was proper in the Eastern District of Michigan. (*Id.*, ¶ 3). David J.

---

[5] Exhibits are to the Declaration of Michael C. Simoni filed in support of this motion.

[6] Judge Michelson has since been appointed to the District Court.

3

Simonelli, a Michigan attorney, represented Plaintiff.  Mr. Simonelli is identified with the U.S. Patent and Trademark Office ("PTO") as the attorney of record with respect to Plaintiffs' trademark.[7]

In response to Plaintiff's complaint, LMP retained the Detroit law firm Miller, Canfield, Paddock and Stone, P.L.C., answered Plaintiff's complaint, and filed a counterclaim seeking cancellation of Plaintiff's trademark and a declaration of noninfringement.

## II.   THE PARTIES NEGOTIATE AND ENTER THE COEXISTENCE AGREEMENT IN MICHIGAN AND CHOOSE MICHIGAN LAW AS THE LAW GOVERNING THE COEXISTENCE AGREEMENT.

Once the pleadings in the Michigan Action were closed, the parties engaged in limited discovery.  However, with the assistance of the court, and particularly Judge Michelson, the parties mutually agreed to avoid significant litigation costs and negotiate a coexistence agreement.

The parties extensively negotiated the Coexistence Agreement for several months before reaching an impasse.  (Ex. 1, ¶ 6).  To help bridge the gap the parties jointly requested a settlement conference with the magistrate judge.  (Ex. 3, Stipulation).  That conference took place on January 9, 2013, in the Eastern District of Michigan, and was attended by the parties' Michigan counsel and party representatives with authority to settle the case.  (Ex. 4, Notice of Conference).  And, with the able assistance of the magistrate judge, the parties did in fact reach an agreement (Ex. 5, Notice of Settlement).

---

[7] *See* http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4801:y4znut.3.3 (last visited Feb. 12, 2018).

The Coexistence Agreement that the parties ultimately executed was exactly that, an agreement setting forth the terms under which Plaintiff and LMP would continue to use their respective trademarks and an acknowledgement that such use would not likely cause confusion in the marketplace:

> The Parties agree that the [LMP trademark], as used in the manner and form reflected in Exhibit B with LMP Goods, is not confusingly similar to and not likely to cause confusion with the My Pillow Mark.  The Parties further agree that the My Pillow Mark, as used in the manner and form reflected in Exhibit A with the My Pillow Goods, is not confusingly similar to and not likely to cause confusion with the [LMP trademark].  The Parties' continued use of their respective trademarks in the manner and form reflected in Exhibits A and B shall not constitute infringement of the other's mark, so long as such use is consistent with the Parties' current use and the terms of this Agreement as set forth below.

(Ex. 6, Coexistence Agreement § 1).  The parties mutually released their claims against one another (*id*., § 7), and covenanted not to sue one another based on claims arising from those released (*id*., § 10).  Plaintiff agreed that all notices under the Coexistence Agreement should be sent to its office, but also copied to its attorney in Michigan. (*Id*. § 15.1).  Finally, the parties agreed that the Coexistence Agreement "will be governed by and construed in accordance with the substantive laws of the United States and the State of Michigan, without regard to or application of Michigan's conflicts of law principles."  (*Id*., § 15.2).

The ensuing five years were relatively uneventful until December 2017, when Plaintiff apparently decided that the Coexistence Agreement permitted too much competition on the merits.

### III. PLAINTIFF MANUFACTURES AN EXCUSE TO AVOID THE COEXISTENCE AGREEMENT AND THE NECESSITY OF COMPETING WITH LMP ON THE MERITS.

On December 20, 2017, Plaintiff, through its Michigan counsel—the only counsel who has ever contacted LMP or its attorneys in relation to the Michigan Action or Coexistence Agreement—accused LMP of violating the Coexistence Agreement by purchasing ad words inconsistent with its terms (Dkt. #1, ¶ 19); never mind that Plaintiff's supposed proof doesn't prove anything. Plaintiff also claimed that one of LMP's employees breached the Coexistence Agreement by using in a single email the words "My Pillow" while accurately identifying Plaintiff (*Id.*, ¶¶ 22-23 *see also* Ex. 7, Dec. 20 Ltr. from D. Simonelli); never mind that the actual terms of the Coexistence Agreement permit such nominative fair use.  At bottom, Plaintiff's allegations are designed to hamper competition on the merits. Examples abound: Plaintiff is unhappy that LMP used LMP's own trademark in a radio advertisement that unequivocally conveys the message that LMP *is not* Plaintiff (*see id.*, ¶¶ 26 and 27(a)); Plaintiff wants to prevent LMP from using the word "guarantee" and telling consumers that LMP makes its products in the United States (*see id.* ¶¶ 26 and 27(d)-(e)), as if only Plaintiff is allowed to do so; Plaintiff wants to prevent LMP from truthfully telling consumers that LMP's products are made with LMP's proprietary foam (*see id.*, ¶¶ 26 and 27(c)), as if Plaintiff is the only manufacturer with proprietary technology; and Plaintiff wants to renege on its agreement that LMP's mark is not confusingly similar in an effort to cancel LMP's trademark registration (*see id.*, ¶ 71). That Plaintiff's allegations are baseless is not relevant for purposes of this motion, however. What is relevant is that Plaintiff has used these allegations, which are based on conduct in

6

Michigan, as an excuse to try and cancel unilaterally the Coexistence Agreement and sue LMP in a venue that is far removed from LMP's place of business.

On January 24, 2018, Plaintiff filed the present action in the District of Minnesota, asserting breach of the Coexistence Agreement, trademark infringement and false advertising under the Lanham Act, and a violation of the Minnesota Deceptive Trade Practices Act, and seeking cancellation of the LMP trademark.  (*See* Dkt. #1).  While Plaintiff is at home in Minnesota, the District of Minnesota is, for a host of reasons, an inconvenient forum for this case: LMP is a small company with few resources to litigate in distant places; the key witnesses and bulk of relevant evidence is located in Michigan; and, importantly, the Eastern District of Michigan has a significant interest in this case as virtually all of Plaintiff's claims hinge on its ability to maneuver out of the Coexistence Agreement governed by Michigan law.  Accordingly, for the reasons set forth below, LMP respectfully requests that this Court transfer this case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

## **LEGAL STANDARD**

A district court may transfer a case "[f]or the convenience of the parties and witnesses, in the interest of justice …." 28 U.S.C. § 1404(a). The statute is aimed at preventing waste of time and resources, and protecting the parties, witnesses and public from unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The party seeking transfer is ordinarily responsible for showing that transfer is warranted, *Terra Int'l v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997), and the decision to transfer a case under § 1404(a) is within the court's discretion, *id*. at 691.

**ARGUMENT**

On a motion to transfer under § 1404(a), the court must first determine whether the action might have been brought in the proposed transferee district and, if so, whether convenience and justice support transfer. *See Austin v. Nestle USA*, 677 F. Supp. 2d 1134, 1136 (D. Minn. 2009). The factors enumerated in § 1404(a) are not exhaustive, and the Court may also "weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010).

## I.   THE EASTERN DISTRICT OF MICHIGAN IS A PROPER VENUE AND ALREADY HAS A SUBSTANTIAL CONNECTION TO THIS CASE.

The Court may transfer this case to "any other district … where it might have been brought …." 28 U.S.C. § 1404(a). Venue is proper in a district in which any defendant resides. 28 U.S.C. § 1391(b)(1). LMP is a Michigan corporation with its principal place of business in the Eastern District of Michigan and so it resides in the Eastern District of Michigan. *See* 28 U.C.S. § 1391(d). This case could thus have been brought in the Eastern District of Michigan and may be transferred there. 28 U.S.C. § 1404(a).

Plaintiff cannot claim otherwise seeing as the very contract on which this case is based arose of out of a nearly identical suit that Plaintiff filed against LMP in the Eastern District of Michigan. *See My Pillow, Inc. v. LMP Worldwide, Inc.*, Case No. 12-cv-10299 (E.D. Mich. 2012). Curiously, Plaintiff's complaint carefully omits any reference to the case name, docket number and venue of its prior lawsuit and suggests an effort at forum shopping at worst.

8

In fact, the complaint in this action is largely identical to the complaint filed in the Michigan Action (*compare*, Dkt. #1, ¶¶ 35–71, *with* Ex. 2, ¶¶ 14–38), and would likely be treated a companion to the Michigan Action and assigned to the judge presiding in that matter, *see* E.D. Mich. LR 83.11(b)(7) (defining companion cases and providing for reassignment to the judge with the earlier case number).  Beyond that, Plaintiff's counsel, who prosecuted the Michigan Action and is representing Plaintiff in this suit, is located in Michigan.  Plaintiff, moreover, engaged in months of negotiations, through its Michigan counsel, leading up to the Coexistence Agreement that forms the basis for the present case. That agreement was ultimately reached at a settlement conference in which the magistrate judge (in Michigan) was instrumental in bringing the parties to an amicable resolution. Plaintiff's central claim here is an outgrowth of the Michigan Action and governed by Michigan law: without successfully showing breach of the Coexistence Agreement, which is governed by Michigan law, most (if not all) of Plaintiff's claims would fail. So, in addition to being a proper venue, the Eastern District of Michigan is the venue with the most substantial connection to this case.  It would certainly serve the interests of justice to litigate the claim in the forum where the Coexistence Agreement was negotiated, and before a court that is already familiar with its details and that assisted the parties in reaching the agreement.

Accordingly, this Court should transfer this case to the Eastern District of Michigan. As explained below, transfer is warranted for the convenience of the parties and witnesses and in the interest of justice.

## II.    THE EASTERN DISTRICT OF MICHIGAN IS A FAR MORE CONVENIENT FORUM THAN THE DISTRICT OF MINNESOTA.

In evaluating the convenience of the parties and witnesses, district courts in the Eighth Circuit typically consider the following five factors: "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each state's forum law." *Terra*, 119 F.3d at 696. These factors weigh decidedly in favor of transferring the case.

### A.    The Convenience of the Parties favors Transfer to Michigan.

In considering the parties' convenience, their residence is the logical staring point. *See U.S. Fid. & Guaranty Corp. v. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992).  But party residence alone is not controlling, *see In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014), and should be balanced against other factors affecting the parties' ability to litigate in the forums at issue, *see Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 461 (E.D. Pa. 2013).  The ultimate questions are whether the original forum is inconvenient for the defendant and whether the plaintiff would be "substantially inconvenienced by a transfer." *See* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3849 (4th ed. 2013) ("Wright & Miller").  Transfer is warranted because the inconvenience to LMP of litigating in Minnesota substantially outweighs the slight inconvenience to Plaintiff of litigating in Michigan.

The District of Minnesota is an inconvenient forum for LMP.  LMP is a small company headquartered in Milford, Michigan. (Ex. 1, ¶3).  LMP has neither a facility nor any employees in Minnesota, (*id.*, ¶ 13), and has no presence there save for a single independent sales representative, (*id.*).  It has seven employees, all located in Michigan. (*Id.*, ¶ 7).  Three of those employees will very likely be important witnesses in this case. Requiring them to abandon their jobs to attend trial in Minnesota would be crippling to LMP's ability to carry on its day-to-day business.  (*Id.*, ¶ 8).  On top of that, the cost of transporting these employees and housing them during trial will have a material financial impact on LMP.  (*Id.*).  Likewise, LMP's counsel is located in Michigan (*id.*, ¶ 12); requiring LMP to bear the cost of paying counsel to travel to and from Minnesota significantly increases the inconvenience to LMP of having to litigate in in Minnesota. *See Cambridge Filter Corp. v. Int'l Filter Co., Inc.*, 548 F. Supp. 1308, 1311 (D. Nev. 1982) (finding counsels' location in the transferee district had "a direct bearing on the factors of convenience and cost" and weighed in favor of transfer).  Simply put, if this case remains in Minnesota, LMP's ability to operate its business will be severely impeded and virtually impossible if its key employees are required to leave Michigan to attend trial in Minnesota. *See  SRAM Corp. v. Sunrace Roots Enter. Co.*, 953 F. Supp. 257, 260 (N.D. Ill. 1997). Thus, this is not a situation where transfer of venue simply transfers the inconvenience from one party to another; rather, transferring the case to Michigan would, avoid significant personal and financial costs to LMP's witnesses, and significantly minimize the inconvenience to LMP.  *Apple*, 602 F.3d at 913.

Plaintiff, on the other hand, will not be substantially inconvenienced by a transfer. Significantly, Plaintiff already decided that Michigan is not an inconvenient forum as evidenced by its decision to file at least three federal suits in Michigan: as mentioned previously, in 2012 Plaintiff sued LMP in Michigan for trademark infringement; four years later, Plaintiff filed a trademark infringement suit in Michigan against a Chinese company, *see My Pillow, Inc., v. Hangzhou Warm Home Textile Co., Ltd.*, Case No. 16-cv-13571 (E.D. Mich. 2016); then, just last year, Plaintiff filed a patent infringement suit in Michigan against a North Carolina company, *see My Pillow, Inc. v. JS Fiber Co., Inc.*, Case No. 17-cv-11110 (E.D. Mich. 2017). So Plaintiff cannot credibly say that Michigan is an inconvenient forum. *See Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 189 (N.D. Ill. 1995) (discounting the inconvenience of transfer on the plaintiff where the plaintiff had previously chosen to litigate in distant forums). In a similar vein, Plaintiff's Michigan counsel was intimately involved with all three of the suits it filed in Michigan and is still acting as lead counsel on Plaintiff's behalf. So Plaintiff will not be denied its choice of counsel and will still benefit from the attorney most familiar with the facts and issues in this case. Thus, the court should give no credence to any suggestion that Plaintiff would be inconvenienced if this case were transferred to Michigan.

But even if Plaintiff hadn't already determined that Michigan is not an inconvenient forum, Plaintiff has the wherewithal to litigate in the Eastern District of Michigan. While Plaintiff is located in Minnesota, it touts itself as one of the fastest growing companies in the country and employs over 1500 people. *See*, *supra*, n.1. Though some of the employees likely to testify at trial are located in Minnesota, Plaintiff can readily absorb this

cost.  After all, Plaintiff spends over $4 million per month on advertising alone (Dkt. #1, ¶ 10), and, as of 2012, appears on a weekly basis at over 70 home shows, fairs and military bases across the country, *see*, *supra*, n.1.  In contrast to LMP, it is highly unlikely that Plaintiff's business will be meaningfully disrupted if certain of its employees are required to travel to Michigan for trial.  In short, Plaintiff is a much larger company than LMP, and has considerable resources at its disposal to be able to litigate in Michigan.  Moreover, Plaintiff's lead attorney and attorney of record with the PTO, who was admitted to this Court *pro hac vice* on February 9, 2018 (Dkt. #8), is located in Michigan.  Hence, any disruption to Plaintiff's business by transferring the case to Michigan would be minimal.  Therefore, the convenience of the parties favors transferring this case to the Eastern District of Michigan.

**B.      The Convenience of the Witnesses Heavily Favors Transfer to Michigan.**

The convenience of the witnesses is the most important factor affecting transfer under 28 U.S.C. § 1404(a).  *See Biometrics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 876 (E.D. Mo. 2000).  The Eighth Circuit specifically cited the "significant" costs to witnesses that transfer would avoid when it issued a writ of mandamus ordering the district court to transfer a case to the Northern District of California.  *Apple*, 602 F.3d at 913.  Similar considerations dictate transfer here.  The conduct at issue involves an alleged breach of contract, LMP's supposed wrongful use of certain online ad words and statements made by an employee in an email.  The most important witnesses are all located in Michigan and forcing them to attend trial in Minnesota will cause substantial inconvenience and hardship.  *See Apple*, 602 F.3d at 913-14 (finding the fact that transfer

13

would significantly minimize party and non-party witnesses' "personal costs associated with being away from work, family and community" weighed in favor of transfer).

Michael Blagborne is the employee responsible for purchasing online ad words, maintaining LMP's website and overseeing LMP's e-commerce.  (Ex. 1, ¶ 9).  His testimony will go to the heart of Plaintiff's breach-of-contract claim and will be indispensable to LMP's defense of this case in terms of rebutting Plaintiff's allegations that LMP's ad word purchases violate the Coexistence Agreement.  Yet Mr. Blagborne lives and works in Michigan (*id.*), and requiring him to travel to Minnesota will be a substantial burden.  *See Apple*, 602 F.3d at 913-14.  It will also cause substantial disruption to LMP's operations: Mr. Blagborne, in addition to the duties outlined above, is LMP's plant manager and his presence at LMP's production facility is critical to LMP's day-to-day business. (Ex. 1, ¶ 9).  As such, Mr. Blagborne's absence from Michigan to attend trial in this case will unduly harm LMP's business. Transferring this case to Michigan will significantly minimize the burden on Mr. Blagborne in terms of his time away from work and family and his substantial responsibilities as LMP's plant manager.  *See Apple*, 602 F.3d at 913-14.

Shana Hughes is the LMP employee who sent the email that allegedly violates the parties' Coexistence Agreement. (Ex. 1, ¶ 10).  She performs customer service and handles small-company sales.  (*Id.*).  As with Mr. Blagborne, her testimony will be central to the breach-of-contract claims: Ms. Hughes will provide testimony concerning the allegations that LMP falsely quotes statistics and give the context in which her email was sent. Likewise, Ms. Hughes's testimony will be relevant to Plaintiff's false advertising and

14

unfair competition claims; for example, Ms. Hughes's testimony will touch on whether her email contained false or misleading statements of fact or was mere sales puffery, and whether it was a commercial advertisement at all. *See* 15 U.S.C. § 1125(a) (stating elements for false advertising and false designation of origin); *see also, e.g.*, *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004) (requiring false statements of fact and observing that puffery is non-actionable); *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 801 (6th Cir. 2015) (holding that a commercial advertisement is one that is commercial, aimed at influencing purchasing decisions, and sufficiently disseminated to relevant purchasing public). And her testimony will help provide the foundation to LMP's nominative fair use defense. *See Select Comfort Corp. v. Baxter*, 156 F. Supp. 3d 971, 987 (D. Minn. 2016) (describing the elements of nominative fair use). But, most important for present purposes, Ms. Hughes is an hourly employee. (Ex. 1, ¶ 10). Any time spent away from work, much less time spent travelling to Minnesota for trial, directly affects her paycheck and will have a very real personal impact on her and her family. *See Apple*, 602 F.3d at 913-14. Hence, requiring Ms. Hughes to attend trial in Minnesota will cause an extreme and undue burden on her, *see id.*, which should compel this Court to transfer the case to Michigan.

Next, LMP's accountant, Melissa Garcia, is located in Michigan. (Ex. 1, ¶ 11). Ms. Garcia's testimony will be necessary with respect to LMP's accounting and financial records, which will be relevant to a number of issues, including Plaintiff's request for an award based on LMP's profits. (*See* Dkt. #1, Pg 17, ¶ H). As with LMP's other employees,

requiring Ms. Garcia to travel to Minnesota will cause a substantial burden to her, *see Apple*, 602 F.3d at 913-14, as well as LMP in terms of productivity.

In addition to LMP's employees, its president, Mark Arthurs, is a Michigan resident and an essential witness. (Ex. 1, ¶ 5). Mr. Arthurs will testify regarding LMP's selection, development and use of its mark, LMP's application and registration of its mark, and LMP's products and marketing channels. (*Id.*). Thus, Mr. Arthurs' testimony will be essential to the infringement claims and will bear on any likelihood of confusion analysis. *See, e.g.*, *Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 2d 965, 973-78 (D. Minn. 2017) (discussing evidence relevant to likelihood of confusion analysis). Moreover, Mr. Arthurs was also instrumental in negotiating the Coexistence Agreement (Ex. 1, ¶ 6), and so, to the extent the parties' intent and other parol evidence is relevant to construing and interpreting the Coexistence Agreement, Mr. Arthurs will be a key witness.

By contrast, only one relevant known witness, Plaintiff's founder, Mike Lindell, resides in Minnesota. Though the Eastern District of Michigan may be less convenient for Mr. Lindell than Minnesota, his inconvenience is overwhelmingly outweighed by the inconvenience to the majority of party witnesses if this case stays in Minnesota. This is especially true given Mr. Lindell's determination in 2012, in 2016 and again in 2017 that Michigan was not an inconvenient forum. *See Von Holdt*, 887 F. Supp. at 189.

But more important than the party witnesses, relevant third-party witnesses are located in Michigan. Indeed, the "location of third-party witnesses is usually given more weight in the analysis of considerations relating to witnesses." *WhatRU Holding, LLC v. Bouncing Angels, Inc.*, No. 13-2745, 2014 WL 2986657, at *3 (D. Minn. July 1, 2014). In

this case, LMP used third parties to produce the radio advertisement and other marketing materials that are alleged to infringe Plaintiff's mark and constitute unfair competition. (Ex. 1, ¶¶16-17).  Among them is Atlas Industries, a small production company located in Southfield, Michigan, and Allegra Marketing, a Michigan-based marketing and advertising firm.  (*Id.*).

LMP worked with Atlas to produce the radio advertisement that forms the basis of part of Plaintiff's claims.   (*Id.*, ¶ 16).   Witnesses from Atlas will thus have material information.  Atlas's employees—roughly ten in all—are located in Michigan (*id.*),[8] and are outside of this Court's subpoena power.  *See Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1139 (D. Minn. 2009) (finding the fact that non-parties with material information were located outside the court's subpoena power weighed in favor of transfer). So too are the relevant witnesses from Allegra.  *See id.*  The ability to preserve their testimony by deposition, even by video deposition, is no substitute for live testimony.  *See Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 853 (S.D. Ohio 2007) ("[T]rial by video tape is simply not preferable to live examination in front of a jury."); *Hoppe v. G.D. Searle & Co.*, 683 F. Supp. 1271, 1276 (D. Minn. 1988) ("Forcing the defendant to conduct its case by deposition, even video tape deposition, is simply unjustified.").  Furthermore, Atlas, being a very small company, will be significantly burdened if its employees are forced to miss time from work and expend funds to travel to Minnesota for trial.  *See Apple*, 602 F.3d at 913-14.  As such, this factor almost compels transfer to Michigan.

---

[8] *See* https://www.atlasindustries.tv/team (last visited Feb. 8, 2018).

**C.     The Accessibility to Records and Documents Supports Transfer to Michigan.**

The physical location of documents and records is an important consideration under § 1404(a).  *See Apple*, 602 F.3d at 914.  As the Eighth Circuit recognized in *Apple*, "[w]hile electronic filing may lessen the inconvenience of document handling," it is still not equivalent to the physical location of the documents, "if the need arises to refer to original documents or evidence in the litigation." *Id*.

In relation to this case, the bulk of any evidence relating to the claims of trademark infringement or unfair business practices would be located at LMP's headquarters in Michigan, or with third-party witnesses in Michigan.  Specifically, records pertaining to LMP's ad word purchases, its website, its advertising and its communications with customers and others are all housed in Michigan. (Ex. 1, ¶¶ 14-15).  These records will also be relevant to Plaintiff's claim that LMP breached the Coexistence Agreement, which is the claim driving this entire case.  Similarly, records pertinent to issues of consumer confusion are primarily located in Michigan. These include, for instance, records evidencing LMP's intent, product quality, distribution, trade channels, target consumers, and markets.  *See, e.g.*, *Everest Capital Ltd. v. Everest Funds Mgmt., LLC*, 393 F.3d 755, 759-61 (8th Cir. 2005); *Eyebobs*, 259 F. Supp. 3d at 973-78. Likewise, all records relevant to LMP's finances are located in Michigan (Ex. 1, ¶ 14), and are relevant to Plaintiff's request for damages under 15 U.S.C. § 1117 based on LMP's profits.  Finally, to the extent the Coexistence Agreement is subject to construction, relevant communications, documents or other parol evidence will be located in Michigan and with the parties' Michigan counsel.

18

In contrast, relatively few records and proofs are located in Minnesota. Any inconvenience that Plaintiff will have in gathering its sources of proof and transporting them to Michigan will be minimal in comparison to the burdens placed on LMP. *See Compression Tech. Solutions, LLC v. EMC Corp.*, No. 11-1579, 2012 WL 1188576, at *7 (E.D. Mo. Apr. 6, 2012). Thus, this factor favors transfer to the Eastern District of Michigan.

**D.     The Location Where the Conduct Complained of Occurred Weighs in Favor of Transfer to Michigan.**

Plaintiff's case centers on its allegations that LMP breached the parties' Coexistence Agreement. That breach occurred, if anywhere, in Michigan where LMP's headquarters and corporate nervous system is centered. *See Apple*, 602 F.3d at 914 (observing that "the alleged misconduct originated from [the defendant's] headquarters" even though the plaintiff claimed misconduct in various countries). And from this central premise flows Plaintiff's other claims that LMP is also infringing Plaintiff's trademark and engaging in unfair competition. Among other things, these claims are based on using LMP's mark inconsistent with the Coexistence Agreement (Dkt. #1, ¶ 17), purchasing ad words inconsistent with the Coexistence Agreement (*id*., ¶ 19), making various statements in an email (*id*, ¶¶ 23-24), and producing radio ads (*id*., ¶ 25-27). Plaintiff claims that all of this alleged wrongful conduct was carried out through LMP's employees and agents. (*See, e.g.*, *id*., ¶¶ 17, 19, 22-24).

All of LMP's employees connected to this alleged misconduct are located in or acted from Michigan, where LMP is headquartered, its decisions are made, its marketing and

19

promotional materials originate, and its products are manufactured.  (Ex. 1, ¶¶5-7, 9-11).

So regardless of the legal theory, all of the alleged wrongful conduct occurred in Michigan,

which weighs in favor of transfer to the Eastern District of Michigan. *See, e.g.*, *Kjaer Weis*

*v. Kimsaprincess Inc.*, __ F. Supp. 3d __, 2017 WL 48823326, at *3 (N.D. Ill. 2017) (citing

cases and finding that in a trademark infringement suit the situs of the wrongful conduct is

where the products are designed, manufactured and marketed).

## E. The Applicability of Each State's Forum Law Strongly Supports Transfer to Michigan.

The Supreme Court observed in *Gulf Oil Corp. v. Gilbert*, that "[t]here is an

appropriateness … in having the trial of a diversity case in a forum that is at home with the

state law that must govern the case." 330 U.S. 501, 509 (1947).  Where only one state's

substantive law weighs on the scales this factor favors placing venue in that state. *See*

*Apple*, 602 F.3d at 915 ("The only state law weighing on the scales at this stage of the

litigation is the California law that must apply to one of Luxpro's causes of action.  This

factor favors transfer.").  Although jurisdiction in this case is not solely based on diversity,

the *Gulf Oil* court's observation holds true: Michigan law will play an outsized role here

and Michigan is where this case should be litigated.

Even though Plaintiff is careful to avoid saying so (*see, e.g.*, Dkt. #1, ¶ 1), the central

claim in this case is governed by Michigan law.  Specifically, Plaintiff's claims hinge on

its ability to claim that LMP has violated the terms of the parties' Coexistence Agreement.

The Coexistence Agreement is expressly governed by Michigan law (Ex. 6, § 15.2), and is

not merely a settlement agreement in which the parties mutually agreed to end litigation,

as Plaintiff would have the Court believe.  Rather, the Coexistence Agreement set forth the terms under which both parties agreed to continue the very marks that are at issue in this case.  The parties effectively agreed that use of the marks consistent with the Coexistence Agreement is not infringement and, by extension, not false advertising or unfair competition.  Consequently, in order to succeed on any of its federal claims, Plaintiff must first show, under Michigan contract law, that LMP breached the Coexistence Agreement.

Based on Plaintiff's complaint, it appears that the essential dispute over the Coexistence Agreement's continuing validity, and hence the validity of Plaintiff's other claims, will be whether LMP's employees and agents have violated Section 2.1(a) of the Coexistence Agreement.   LMP vigorously disputes Plaintiff's interpretation of that provision, and is filing concurrently with this motion a motion to dismiss Plaintiff's complaint.  The primary issue in this case will therefore turn on Michigan's law of contract construction and interpretation.  Transfer to the Eastern District of Michigan is warranted under these circumstances.  *See Apple*, 602 F.3d at 915.

Plaintiff's claim under the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44, does not change this result. Minnesota courts hold without exception that MDTPA claims are coextensive with Lanham Act claims when the same underlying conduct forms the basis of both claims. *Buetow v. A.L.S. Enters.*, 650 F.3d 1178, 1183 (8th Cir. 2011) ("When a commercial plaintiff assert[s] pendent state law claims under these Minnesota [consumer protection] statutes in a Lanham Act trademark dispute, we note[] that the pendent claims 'are coextensive with the federal claims.'"). The Lanham Act and the MDTPA require proof of the same substantive elements. *3M Innovative Props.*

*Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 968 (D. Minn. 2005). Consequently, the same legal analysis applies to both causes of action, whether under the Lanham Act or the MDTPA. *E.g.*, *Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, 829 F. Supp. 2d 802, 809 n.7 (D. Minn. 2011) ("The Court's analysis under the Lanham Act applies equally to claims under the Minnesota UDTPA."); *Med. Graphics Corp. v. Sensormedics Corp.*, 872 F. Supp. 643, 649 (D. Minn. 1994) ("Minnesota federal district courts have found that 'the Minnesota Deceptive Trade Practices Act mirrors the Lanham Act and thus use the same analysis to evaluate false advertising claims that are made simultaneously under the federal and state statutes.'"). Therefore, Plaintiff's Minnesota state-law claim is effectively no different that its federal claims and so, for purposes of evaluating the significance of local law in this case, does not weigh against transfer to Michigan.

In sum, a Michigan court is better situated to resolve issues under Michigan law that will impact the validity of all the claims in this case. This Court should therefore find that transfer to the Eastern District of Michigan is appropriate.

## III.    THE INTERESTS OF JUSTICE WEIGH DECIDEDLY IN FAVOR OF TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN.

In the Eighth Circuit, the "interest of justice" factors are considered to be "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local

court determine questions of local law." *Terra*, 119 F.3d at 696. Several of these factors weigh heavily in favor of transfer in this case.[9]

## A.      The Advantages of Having a Local Court Determine Questions of Local Law.

As explained above, Michigan law will play an outsized role in this case. The validity of Plaintiff's claims hinge on its effort to avoid a contract that is governed by Michigan law based on allegedly wrongful conduct emanating from Michigan. This will turn on Michigan's contract law and Michigan unquestionably has a significant interest in seeing that its law is properly applied. *See Apple*, 602 F.3d at 915; Wright & Miller, *supra*, § 3854 ("Additionally, judicial opinions have noted that the administration of justice is better served when the action is litigated in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute."). So, even though Plaintiff's federal claims require the application of federal law and would ordinarily be a neutral factor, federal substantive law will play a secondary role in this case. And Minnesota's substantive law is only involved on a superficial level, as Plaintiff's MDTPA claim is analytically identical to the federal claims. *Aviva Sports.*, 829 F. Supp. 2d at 809 n.7. Accordingly, this factor points toward transfer to the Eastern District of Michigan.

## B.      The Comparative Costs to the Parties of Litigating in Each Forum.

---

[9] Conflict of law issues and the parties' ability to enforce a judgment appear to be irrelevant at this time. Nor is there any present evidence that either forum would present obstacles to a fair trial.

23

The Eighth Circuit has recognized that the comparative costs of the parties of litigating in each forum is an appropriate factor to consider on a motion to transfer under § 1404(a). *See Terra*, 119 F.3d at 696. The court's application of this factor in *U-Haul Int'l, Inc. v. Hire A Helper, LLC*, No. 08-1271, 2008 WL 4368663 (D. Ariz. Sept. 23, 2008), a trademark case, is particularly apt:

> [U-Haul's] principal place of business is Arizona, but U-Haul is a large, international corporation doing business around the globe. HH, by contrast, is a small, newly-formed California company with four employees. The disruption of business affairs due to the time and cost of distant litigation is far more severe and detrimental to a small [company] than it is to a much larger corporation. This factor therefore weighs strongly in favor of transferring this case to the Southern District of California.

*Id.* at *2 (internal citations and quotation marks omitted); *see also SRAM Corp.*, 953 F. Supp. at 260 (granting motion to transfer where the plaintiff, a company with over 500 employees and annual sales of $50 million could more easily shoulder the burden of litigating in a distant forum than the defendant, a small company with only five employees).

Just as in *U-Haul*, forcing LMP to litigate this case in Minnesota is comparatively much more burdensome than requiring Plaintiff to litigate in Michigan. As explained above, LMP, similar to the defendant in *U-Haul*, is a small, Michigan-based company and cannot easily bear the cost of litigating in a distant forum. Indeed, like the defendant in *U-Haul*, LMP will likely lose significant productive time if and when three of its essential employees are required to take time out of their days to sit for depositions and eventually travel to Minnesota for trial. Much like the plaintiff in *U-Haul*, the same cannot be said of Plaintiff here.

24

Moreover, LMP's counsel is located in Michigan and so LMP will have to bear its attorneys' travel costs as well as the expense of retaining local counsel in Minnesota. *See Cambridge Filter*, 548 F. Supp. at 1311. Plaintiff, on the other hand, is already represented by counsel in Michigan who is intimately familiar with the facts and issues involved in this case. Thus, if this case is transferred, Plaintiff will already have its lead counsel in place and will not be required to bear any travel costs or retain additional attorneys. And, as stated elsewhere, Plaintiff has already determined that Michigan is not an inconvenient forum. *See Von Holdt*, 887 F. Supp. at 189. Therefore, the parties' comparative costs and ability to bear them favor transferring this case to Michigan.

## C.     Transferring this Case to Michigan would Advance Judicial Economy.

Although not by itself dispositive, "[d]ocket congestion is a permissible factor to consider in deciding a § 1404(a) motion …." *Apple*, 602 F.3d at 916; Wright & Miller, *supra*, § 3854 (observing that docket congestion is relevant to the § 1404(a) analysis). The judges in the District of Minnesota have, on average, a case load that is more than double that of the judges in the Eastern District of Michigan. (Ex. 8 (showing 932 pending cases per judgeship in the District of Minnesota versus 422 pending cases per judgeship in the Eastern District of Michigan). While the two districts have similar times to final disposition, the time to trial in Michigan is slightly shorter. (*See id*.). What's more, the fact that a judicial vacancy in the District of Minnesota has resulted in a judicial emergency,[10] whereas no such emergencies currently exist in the Eastern District of

---

[10] *See* http://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last visited Feb. 5, 2018).

Michigan, supports transferring this case to Michigan. *See Avritt v. Reliastar Life Ins. Co.*, 06-1435, 2007 WL 666606, at *4 (W.D. Wash. Feb. 27, 2007) (finding that a judicial emergency in the Western District of Washington weighed strongly in favor of transfer to the District of Minnesota where no judicial emergency existed); Wright & Miller, *supra*, § 3854 (observing that a judicial emergency in one district "is a potent argument" against venue in that district). Consequently, the congestion of this Court's docket relative to the docket in the Eastern District of Michigan weighs in favor of transfer to Michigan.

## D.     Plaintiff's Choice of Forum Should Not Be Given Significant Deference.

Section 1404(a) is not simply a codification of the common-law *forum non conveniens* doctrine. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("Congress, by the term 'for the convenience of the parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience."). As a consequence, "a plaintiff's choice of forum is no longer entitled to the great weight given it under the doctrine of *forum non conveniens* and is simply one factor to be considered." *Medtronic v. Am. Optical Corp.*, 337 F. Supp. 490, 497 (D. Minn. 1971). And even if the plaintiff is a resident of the forum, his choice should be given less deference if the operative facts have little connection to the chosen forum. *See GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc.*, No. 02-1224, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) (affording little deference to the plaintiff's choice of its home forum where the operative facts took place in the proposed transferee forum).

Plaintiff's choice of forum here is entitled to little deference because, as explained above, the vast majority of the operative facts occurred in Michigan. Aside from one radio

ad, the only fact tying this case to the District of Minnesota is that Plaintiff is headquartered in this district.  But these facts alone should not be sufficient to overcome the balance of the other relevant factors under § 1404(a), especially given the substantial connection to the previously filed Michigan Action and importance of Michigan law.  At bottom, the balance of relevant factors should lead this Court to transfer this case to the Eastern District of Michigan.

## CONCLUSION

For the reasons discussed herein, LMP respectfully requests that this lawsuit be transferred to the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1404(a).

Dated: February 15, 2018          **ROBINS KAPLAN LLP**

By: _/s/ Peter N. Surdo_____
Matthew L. Woods (MN #0205278)
Peter N. Surdo (MN #0339015)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
Tel.: (612) 349-8500
Fax: (612) 339-4181
mwoods@robinskaplan.com
psurdo@robinskaplan.com

A. Michael Palizzi
(*Motion for admission to be filed*)
Michael C. Simoni
(*Motion for admission to be filed*)
Miller, Canfield, Paddock and Stone, PLC
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Facsimile: (212) 496-7500
Palizzi@millercanfield.com
simoni@millercanfield.com

*Attorneys for Defendant*

88739940.1