UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

My Pillow, Inc.,                                              Case No. 18-cv-0196 (WMW/SER)

                    Plaintiff,

                                **ORDER DENYING DEFENDANT'S MOTION TO TRANSFER AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

    v.

LMP Worldwide, Inc.,

                    Defendant.

---

Plaintiff My Pillow, Inc., initiated this trademark-infringement lawsuit against Defendant LMP Worldwide, Inc. (LMP). Currently before the Court are LMP's motion to transfer the lawsuit to the United States District Court for the Eastern District of Michigan, (Dkt. 11), and LMP's motion to dismiss My Pillow's complaint for failure to state a claim, (Dkt. 18). For the reasons addressed below, the Court denies LMP's motion to transfer and grants in part and denies in part LMP's motion to dismiss the complaint.

## BACKGROUND

My Pillow is a Minnesota-based company that manufactures and sells pillows. My Pillow has used the registered trademark "MYPILLOW" (the My Pillow mark) since 2009. LMP has used the registered trademark *i ♥ my pillow* (the LMP mark) since 2007. In January 2012, My Pillow initiated a lawsuit against LMP in the United States District

Court for the Eastern District of Michigan, alleging trademark infringement and unfair competition. The lawsuit was terminated when the parties signed a settlement agreement (the agreement), which establishes the terms under which each party can use the marks at issue. The agreement, which is governed by Michigan law, authorizes LMP to use the LMP mark. The agreement also contains the following provision: "The Parties agree that the [LMP mark], as used in the manner and form reflected in [the agreement], is not confusingly similar to and not likely to cause confusion with the My Pillow Mark." The agreement also prohibits LMP from using the My Pillow mark in connection with pillows and from making any "ad word" purchase[1] for the words "my" and "pillow," whether together or separate, unless accompanied by additional words.

My Pillow alleges that LMP's conduct in the subsequent years violated the agreement and infringed the My Pillow mark. First, My Pillow alleges that, despite the terms of the agreement, LMP purchased the prohibited ad words (i.e., "my," "pillow," and "mypillow" without the accompaniment of additional words). My Pillow notified LMP of this alleged breach of the agreement in December 2016 and, although LMP claimed that it then ceased purchasing the prohibited ad words, My Pillow alleges that LMP continued to purchase the prohibited ad words. Second, My Pillow alleges that an LMP employee used the My Pillow mark in connection with the My Pillow goods and made false representations about My Pillow in an email to a wholesale customer. Third, My Pillow alleges that LMP produced radio advertisements that aired in the state of Minnesota that

---

[1]     An "ad word" purchase is the practice of paying a search engine so that a designated website appears in response to a specified search term.

were designed to cause confusion between My Pillow and LMP. On December 20, 2017, My Pillow notified LMP of these alleged breaches of the agreement, and on January 23, 2018, My Pillow terminated the agreement.

My Pillow subsequently initiated this lawsuit, asserting breach of contract (Count 1), trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 (Count 2), unfair competition and false representation in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count 3), common-law trademark infringement and unfair competition (Count 4), unfair competition and false representation in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44 (Count 5), and trademark cancellation (Count 6). Presently before the Court are LMP's motion to transfer the lawsuit to the Eastern District of Michigan and LMP's alternative motion to dismiss the complaint.

**ANALYSIS**

## I.      LMP's Motion to Transfer

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Section 1404(a) was enacted to address "problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum [is] an inconvenient one." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (internal quotation marks omitted). When deciding a motion to transfer, the district court considers the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). In doing so, the court evaluates the particular circumstances of the case in consideration of all

relevant factors. *Id.* Because transfer motions "should not be freely granted," *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982) (per curiam), *abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990), the moving party bears the heavy burden of demonstrating why a transfer is warranted and, in doing so, must establish that the relevant factors weigh strongly in favor of granting the motion, *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1137 (D. Minn. 2009).

LMP asserts that this lawsuit should be transferred because Michigan is a more convenient forum for the parties and witnesses and because transferring the lawsuit serves the interests of justice. Neither party disputes that My Pillow could have brought the lawsuit in the Eastern District of Michigan.

### A.    Convenience for the Parties

The convenience of each venue for the parties is the first factor considered under Section 1404(a). *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 982 (D. Minn. 2013). This factor includes the travel expenses that each party would incur for airfare, meals, lodging, and loss of productivity if required to litigate in an out-of-state forum. *Oien v. Thompson*, 824 F. Supp. 2d 898, 903 (D. Minn. 2010) (citing *In re Apple*, 602 F.3d at 913). When each party prefers to litigate in its home forum and the moving party "has not presented convincing evidence that its financial position makes it incapable of litigating in Minnesota," this factor is neutral. *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885 (D. Minn. 2015) (internal quotation marks omitted).

LMP argues that this factor favors transfer because of the inconvenience and greater expense of litigating in Minnesota. LMP is based in Michigan, and its employees and

records are located there.  Requiring its employees to travel to Minnesota for litigation, LMP argues, would cripple its business operations and impose considerable financial hardship.  Moreover, at least one of LMP's witnesses is an hourly employee who would be financially burdened by taking time away from work to travel to Minnesota to testify.

My Pillow, which is based in Minnesota and maintains its records here, counters that transfer would simply shift the inconvenience of out-of-state litigation from LMP to My Pillow.  *See Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").  A transfer of venue "should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer."  *Huggins*, 932 F. Supp. 2d at 982 (internal quotation marks omitted).  My Pillow does not refute LMP's argument that My Pillow is a larger company that is better able to absorb the expense of out-of-state litigation.  But, although it is undisputedly a smaller company, LMP has not demonstrated that it is financially incapable of litigating in Minnesota.

In short, because the inconvenience to LMP of litigating in Minnesota would be only slightly greater than the inconvenience to My Pillow of litigating in Michigan, this factor only slightly favors transfer.

### B.      Convenience of the Witnesses

LMP argues that, because essential non-party witnesses are located in Michigan, the convenience-of-the-witnesses factor favors transfer.  My Pillow counters that LMP's non-party witnesses are not essential and, because there are also non-party witnesses in Minnesota, this factor does not favor transfer.

Witness convenience is "often considered the most important factor in the transfer analysis." *Austin*, 677 F. Supp. 2d at 1138. The focus of this factor is the inconvenience to non-party witnesses as "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum."[2] *Bae Sys. Land & Armaments L.P.*, 124 F. Supp. 3d at 885-86 (internal quotation marks omitted). This factor does not pose "a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts." *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991). Rather, the party seeking the transfer must clearly identify the essential witnesses to be called and provide a general statement of what their testimony will cover. *Id.*

Here, each party intends to call non-party witnesses; but neither party explains the significance of the testimony of each of these witnesses. LMP intends to call employees of the Michigan-based production company and marketing company that worked on the radio advertisement referenced in the complaint. LMP argues that those employees and their companies will be burdened by travel to Minnesota. My Pillow intends to call radio-station employees from Minnesota to testify about the radio advertisement. But neither party explains how this non-party testimony is relevant, much less essential, to the disposition of the claims. LMP also argues that relevant documents are located in Michigan. But, given the advent of document-reproduction technology, "the location of documents is no longer entitled to much weight in the transfer of venue analysis." *CBS*

---

[2] Both parties present arguments pertaining to their employee-witnesses under this factor. These arguments are addressed in Part I.A. of this Order.

*Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 410 (D. Minn. 2009).

Because it would be inconvenient for the non-party witnesses of both parties to participate in out-of-state litigation, and because neither party establishes that its non-party witnesses are essential, this factor weighs neither for nor against transfer.

### C.     Interests of Justice

LMP argues that the interests of justice favor transferring the lawsuit to Michigan. My Pillow counters that the interests-of-justice factor is no more supportive of transfer than the previously addressed factors.

When analyzing the interests of justice, "courts consider, among other things, judicial economy, the plaintiff's choice of forum, docket congestion, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, and each court's relative familiarity with the applicable law."[3] *Austin*, 677 F. Supp. 2d at 1139.  LMP maintains that it is in the interests of justice to transfer the case to Michigan because the lawsuit requires the application of Michigan law and because doing so would preserve judicial economy.  My Pillow disagrees, arguing that its choice of forum is entitled to deference and this Court is equipped to apply Michigan law.

LMP first argues that the significance of Michigan law weighs in favor of transfer to Michigan.  It is generally preferable for local courts to consider local issues of law.  *See Terra Int'l*, 119 F.3d at 696.  The application of local law is particularly important when

_____

[3]     Neither party presents argument based on ability to enforce a judgment, obstacles to a fair trial, or conflict-of-law issues.

the legal questions at issue are novel. *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1182-83 (D. Minn. 1996). LMP maintains that disposition of most, if not all, of its claims depends on the application of Michigan law to My Pillow's breach-of-contract claim. But LMP does not explain *how* the disposition of My Pillow's breach-of-contract claim will be dispositive of all of My Pillow's other claims. Nor does LMP argue that the application of Michigan law in this lawsuit is complicated or novel. When, as here, the legal questions to be determined by state law are not complex, the Court affords little weight to familiarity with applicable law. *Oien*, 824 F. Supp. 2d at 907.

LMP next argues that judicial economy considerations favor transfer. Judicial-economy considerations encompass the Court's case load as well as other litigation activity between the parties. *See Valspar Corp. v. Kronos Worldwide, Inc.*, 50 F. Supp. 3d 1152, 1157 (D. Minn. 2014). But minor differences in case loads across dockets are inconsequential when the differences do not create a significant threat of delay or additional expense. *See Brockman*, 923 F. Supp. at 1182. Here, the record reflects that, although there is a considerable difference in the case loads of judges in the two districts at issue, only a minor difference exists in the average lengths of time from filing to disposition. LMP also asserts that My Pillow regularly initiates litigation in Michigan, but LMP substantiates this claim only by alleging that My Pillow initiated a lawsuit against LMP in the Eastern District of Michigan in 2012.

Although the 2012 lawsuit settled one year later in 2013, LMP asserts that, if *this* lawsuit is transferred to Michigan, it would "likely be treated [as] a companion" to the 2012 lawsuit because the two lawsuits involve the same parties and "substantially similar

evidence." It is not apparent that this case would be treated as a companion case, however. This lawsuit involves claims for breach of contract, which was not alleged in the 2012 lawsuit, and trademark infringement based on conduct that had not occurred in 2012. *See Jones v. City of Allen Park*, 167 F. App'x 398, 409 (6th Cir. 2006) (finding no abuse of discretion in district court's decision that second lawsuit involving same parties was not a companion case because the focus of the witnesses' testimony would be different and the cases did not arise out of the same transaction or occurrence). Moreover, it is not apparent that a companion-case designation would preserve judicial economy. The 2012 lawsuit was in its early stages when it settled; any benefit to a judge derived from familiarity with the 2012 lawsuit's brief record is minimal. The possibility of being designated a companion case is not legally significant in this transfer analysis. In short, judicial economy only slightly favors transfer.

My Pillow argues that its choice of forum is entitled to deference. LMP disagrees, arguing that this factor is entitled to little weight because the majority of the operative facts took place in Michigan, not Minnesota. The presumption favors the plaintiff's choice of forum, particularly when the plaintiff resides in the district in which the lawsuit was filed. *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp. 3d 1068, 1078 (D. Minn. 2014). But "a plaintiff's choice of forum is simply one factor to be considered in the analysis," and the choice garners less weight when residency is the only connection to the forum state. *Valspar Corp.*, 50 F. Supp. 3d at 1157 (internal quotation marks omitted). My Pillow's choice to initiate this lawsuit in its home state carries some weight, but it is not dispositive.

In short, judicial economy slightly favors transfer, deference to the plaintiff's choice of forum slightly disfavors transfer, and the application of the forum state's law has little significance. Thus, the interests of justice neither favor nor disfavor transfer.

### D. Conclusion

In summary, the convenience of the parties only slightly favors transfer, and the interests of justice and convenience of the witnesses are both neutral. Based on these factors, LMP has not carried its heavy burden of establishing that the relevant factors weigh strongly in favor of transfer. *See Austin*, 677 F. Supp. 2d at 1137. Because transfer motions "should not be freely granted," *In re Nine Mile Ltd.*, 692 F.2d at 61, LMP's motion to transfer is denied.

## II. LMP's Motion to Dismiss the Complaint

LMP moves to dismiss the complaint filed in this action for failure to state a claim on which relief can be granted. A complaint must allege facts that, when accepted as true, establish a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). When applying this pleading standard, a district court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," and the factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions that are couched as factual allegations may be disregarded by the district court when applying this pleading standard. *See Iqbal*, 556 U.S. at 678-79.

### A.    Breach of the Agreement

My Pillow alleges that LMP breached two provisions of the parties' agreement: Section 2.1(a), which governs LMP's use of the My Pillow mark, and Section 2.1(c), which governs LMP's purchase of ad words for online advertising.  LMP argues that this breach-of-contract claim must be dismissed for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).

Under Michigan law, a settlement agreement is a contract and is "governed by the legal principles applicable to contracts."[4]  *Hisaw v. Hayes*, 350 N.W.2d 302, 303 (Mich. Ct. App. 1984).  To plead a breach-of-contract claim, a plaintiff must allege that (1) there was a contract, (2) the defendant breached the contract, and (3) the plaintiff suffered damages as a result of the breach.  *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 921 (Mich. Ct. App. 2014).  LMP challenges the second element, arguing that My Pillow fails to allege facts supporting breach of the agreement's provisions concerning the purchase of ad words and use of the My Pillow mark.

According to LMP, My Pillow fails to allege facts supporting its claim that LMP purchased ad words in violation of the agreement.  Section 2.1(c) of the agreement provides that "LMP shall not purchase nor use ad words . . . on any search engine for the word 'my' and 'pillow,' together as one word or separate as two words, unless it is accompanied by another word or other[] words."  My Pillow alleges that "LMP, through its employees and

---

[4]    The agreement provides that it "will be governed by and construed in accordance with the substantive laws of . . . the State of Michigan, without regard to or application of Michigan's conflicts of law principles."

agents, has purchased the ad words 'My,' 'Pillow' and 'mypillow' without the accompaniment of other word(s)," thereby breaching the agreement. The complaint contains a screen shot of an Internet search for the term "mypillow.com," the results of which include websites presumably run by LMP.

LMP argues that the allegation that it purchased the ad words "my," "pillow," or "mypillow" without the accompaniment of other words is a legal conclusion that is not entitled to a presumption of truth and is similar to the conclusory allegations disregarded by the Supreme Court of the United States in *Iqbal*, 556 U.S. at 680-81. LMP also relies on *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017), in which the Eighth Circuit determined that a plaintiff's complaint failed to state a claim for breach of contract because it "[did] not assert more than the mere possibility of misconduct." LMP's argument is unpersuasive. My Pillow alleges a specific fact that does not require a chain of inferences. My Pillow alleges that LMP, through its employees and agents, purchased specific ad words. That factual allegation is entitled to the presumption of truth. *See Blankenship*, 601 F.3d at 853. Based on the language of Section 2.1(c), this allegation of impermissible ad word purchases supports My Pillow's breach-of-contract claim. As such, My Pillow alleges facts sufficient to state a claim for LMP's breach of the agreement through its purchase of ad words.[5] In summary, LMP's motion to dismiss My Pillow's breach-of-contract claim is denied.

---

[5] In light of this determination, the Court need not address the parties' arguments regarding My Pillow's alternate basis for its breach-of-contract claim pertaining to Section 2.1(a) of the agreement.

### B. Trademark Infringement

LMP also argues that My Pillow fails to state a claim for trademark infringement based on LMP's alleged use of the LMP mark because the agreement authorized the alleged use and provided that the use did not cause confusion. To prevail on its trademark-infringement claims,[6] My Pillow must prove that it owns a registered trademark that LMP used or imitated in commerce in connection with the sale of goods, that LMP's use or imitation of the My Pillow mark was not authorized, and that LMP's use or imitation is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); *accord ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 446 (8th Cir. 2018); *Phoenix Entm't Partners, LLC v. Lapadat*, 123 F. Supp. 3d 1114, 1119 (D. Minn. 2015). My Pillow alleges that LMP's use of the LMP mark infringed on My Pillow's trademark in the My Pillow mark by using the LMP mark in a manner not approved by the agreement. LMP counters that the agreement authorized its use of the LMP mark.

The agreement provides that "LMP has rights to use the [LMP] Mark." My Pillow alleges that "[s]ince the effective date of the [agreement], LMP . . . continued to use the _i ♥ my pillow_ trademark contrary to the terms of the [agreement]." The complaint alleges no specific facts addressing this use, however. The complaint's only allegation pertaining to the LMP mark is a screen shot of LMP's website featuring the LMP mark and photographs of LMP pillows. The use of the LMP mark in the screen shot appears to be

---

[6] Courts analyze a trademark-infringement claim using the same framework whether pleaded under federal law, 15 U.S.C. § 1114(a), or common law. *See Woodroast Sys., Inc. v. Rests. Unlimited., Inc.*, 793 F. Supp. 906, 917 (D. Minn. 1992); *see also DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003).

consistent with the agreement's example of permissible use of the LMP mark. My Pillow does not explain how the use of the LMP mark in the screen shot is not authorized by the agreement. Instead, the only allegation addressing LMP's allegedly impermissible use of the LMP mark is that it was used "in a manner not consented to by My Pillow in the [agreement]." But because this allegation is too conclusory to be entitled to a presumption of truth, *see Iqbal*, 556 U.S. at 678-79, the complaint fails to allege facts supporting a determination that LMP's use of the LMP mark was unauthorized.[7]

In summary, My Pillow's allegations fail to support a determination that LMP's use of the LMP mark was unauthorized. For this reason, My Pillow fails to state a claim for trademark infringement.[8] LMP's motion to dismiss is granted as to Count 2, which alleges trademark infringement under the Lanham Act, and as to Count 4 to the extent that My Pillow alleges common-law trademark infringement.[9]

### C. Cancellation of Registration

LMP also moves to dismiss My Pillow's claim for cancellation of the LMP mark. "In any action involving a registered mark the court may determine the right to registration

---

[7]     My Pillow argues that it is free to assert its trademark claims because it terminated the agreement. But this argument has no bearing on whether the Court applies the terms of the agreement to the parties' conduct during the agreement's duration. The agreement provides that it will "remain in effect until terminated by either party," and none of the conduct on which My Pillow relies occurred after the alleged termination of the agreement.

[8]     In light of this determination, the Court declines to address whether My Pillow has sufficiently alleged a likelihood of confusion.

[9]     Count 4 also alleges a common-law unfair-competition claim. As LMP makes no argument for the dismissal of the common-law unfair-competition claim, the Court declines to address it in this Order.

[or] order the cancelation of registrations." 15 U.S.C. § 1119; *accord E. Iowa Plastics,*

*Inc. v. PI, Inc.*, 832 F.3d 899, 903 (8th Cir. 2016); *Scott v. Mego Int'l, Inc.*, 519 F. Supp.

1118, 1139 (D. Minn. 1981) (explaining that a party may seek cancellation of a mark "in

any court action where validity of the mark is in issue"). My Pillow alleges that the LMP

mark should be cancelled "[b]ecause LMP's use of the [LMP mark] with pillows is likely

to cause confusion with [the My Pillow mark], and My Pillow is the senior user." But

Section 1119 is not an independent cause of action, rather it "provides a remedy for some

other violation of the trademark laws." *E. Iowa Plastics, Inc.*, 832 F.3d at 903. Because

My Pillow fails to state a claim for trademark infringement, My Pillow also fails to

establish a basis for cancellation of the LMP mark. LMP's motion to dismiss is granted as

to Count 6, My Pillow's claim for cancellation of the LMP mark.

### D. Unfair Competition and False Advertising

My Pillow pleads claims of unfair competition and false advertising under

Minnesota's Deceptive Trade Practices Act, Minn. Stat. § 325D.44, and the Lanham Act,

15 U.S.C. § 1125(a)(1),[10] asserting that LMP impermissibly and misleadingly used the My

Pillow mark.[11] Section 1125(a)(1) imposes liability on the following:

> (1)     Any person who, on or in connection with any goods or services . . . uses in
>          commerce any word, term, name, symbol, or device, or any combination

---

[10]     Section 1125(a)(1) is also referred to as Section 43(a) of the Lanham Act.

[11]     The same analysis applies to unfair-competition and false-advertising claims arising
under the Lanham Act and Minnesota law. *Grp. Health Plan, Inc. v. Philip Morris, Inc.*,
68 F. Supp. 2d 1064, 1069 (D. Minn. 1999) ("Plaintiffs' claim for deceptive trade practices
is governed by Minnesota Statute § 325D.44, which requires the same analysis as the
federal Lanham Act.").

thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, *or*

    (B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(A) (unfair competition), (B) (false advertising) (emphasis added).

My Pillow asserts claims under federal and state law for unfair competition and false advertising based on LMP's radio advertisements, LMP's ad word purchase, and an email from an LMP employee to a wholesale customer. LMP moves for dismissal of these claims for failure to state a claim on which relief can be granted.

### 1.    Unfair Competition

My Pillow's unfair-competition claim is based on LMP's radio advertisements and ad word purchase. LMP seeks dismissal of the claim.

The unfair-competition provision of the Lanham Act establishes a federal remedy for unfair competition arising from "false designation of origin or other false representation used in connection with the sale of a product." *Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 713 (8th Cir. 1980). To state a claim for unfair competition in violation of Section 1125(a)(1)(A), My Pillow must allege that the materials used "created a likelihood of confusion, deception or mistake on the part of the consuming public," *Toro Co. v. R & R Prods. Co.*, 787 F.2d 1208, 1214 (8th Cir. 1986), and that

LMP's use of My Pillow's mark "falsely designate[s] the origin of a product," *see Mid-List Press v. Nora*, 275 F. Supp. 2d 997, 1002 (D. Minn. 2003).

LMP asserts that the radio advertisements do not, as a matter of law, create a likelihood of confusion. But, as My Pillow argues persuasively, the confusion inquiry is fact-intensive and generally inappropriate for a motion to dismiss. *See Phoenix Entm't*, 123 F. Supp. 3d at 1121-22 (determining that even cursory and improbable allegations of consumer confusion sufficiently stated a claim for unfair competition). My Pillow alleges in the complaint that LMP used the My Pillow mark and that the use was "calculated to cause confusion, to cause mistake, and/or to deceive as to the source of origin or affiliation of LMP's goods and services." As such allegations of confusion are sufficient under Section 1125(a)(1)(A), My Pillow states a claim for unfair competition.

### 2. False Advertising

My Pillow also alleges a false-advertising claim based on LMP's email to a wholesale customer. But LMP seeks dismissal of this claim, arguing that the email was not a commercial advertisement. To state a false-advertising claim, My Pillow must allege that (1) in a commercial advertisement, LMP made a false statement of fact about a product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of the statement's audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) LMP caused the false statement to enter interstate commerce; and (5) My Pillow was injured as a result of the false statement. *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 (8th Cir. 2011). A statement is made in a commercial advertisement if the representations are commercial speech, made by a commercial competitor, for the

purpose of influencing consumers to buy that competitor's goods. *Med. Graphics Corp. v. SensorMedics Corp.*, 872 F. Supp. 643, 650 (D. Minn. 1994). Such a statement also "must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* The failure to establish commercial speech or dissemination to the public can result in dismissal of a false-advertising claim. *See Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1070 (D. Minn. 1999).

To establish its false-advertising claim, My Pillow relies solely on a statement made by an LMP employee to a wholesale customer in a private email.[12] Because the complaint does not allege that this statement was sufficiently disseminated or directed to the purchasing public, it was neither "advertising" nor "promotion." *See id.* As My Pillow's false-advertising claims fail as a matter of law, LMP's motion to dismiss is granted as to Counts 3 and 5 to the extent that each count asserts a false-advertising claim.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Defendant LMP Worldwide, Inc.'s motion to transfer, (Dkt. 11), is **DENIED**.

---

[12]      The complaint ambiguously conflates distinct allegations and claims. But in its opposition to LMP's motion to dismiss, My Pillow relies solely on LMP's email to a wholesale customer to support its false-advertising claims. Therefore, the Court declines to consider other factual allegations in the complaint with respect to the false-advertising claims.

2.    Defendant LMP Worldwide, Inc.'s motion to dismiss, (Dkt. 18), is:

   a.    **GRANTED** with respect to Counts 2 and 6, which are **DISMISSED WITHOUT PREJUDICE**;

   b.    **GRANTED** with respect to Count 4 to the extent that My Pillow asserts a common-law trademark-infringement claim, which is **DISMISSED WITHOUT PREJUDICE**, and denied as to any other claim asserted in Count 4;

   c.    **GRANTED** with respect to Counts 3 and 5 to the extent that each count asserts a false-advertising claim, which are **DISMISSED WITHOUT PREJUDICE**, and denied as to any other claims asserted in Counts 3 and 5; and

   d.    **DENIED** in all other respects, as addressed herein.


Dated:  September 6, 2018                                    s/Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge