# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| My Pillow, Inc., *a Minnesota corporation*, | Case No. 18-cv-196 (WMW/SER) |
| Plaintiff, | |
| v. | **ORDER** |
| LMP Worldwide, Inc., *a Michigan corporation*, | |
| Defendant. | |

Lora M. Friedemann and Laura L. Myers, Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis MN 55402 (for Plaintiff); and

Matthew L. Woods and Peter N. Surdo, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis MN 55402, and A. Michael Palizzi and Michael C. Simoni, Miller, Canfield, Paddock and Stone, PLC, 150 West Jefferson Avenue, Suite 2500, Detroit MI 48226 (for Defendant).

This matter is before the Court on Plaintiff's Motion for Leave to Amend its Complaint. (ECF No. 43). For the reasons below, the motion is granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

Plaintiff My Pillow, Inc., and Defendant LMP Worldwide, Inc., are competitors in the pillow business. My Pillow, a Minnesota corporation, uses the word mark "MYPILLOW" in selling its pillows (hereinafter "MyPillow mark"), while LMP, a Michigan corporation, uses the design mark " i ♥ my pillow " in its sales (hereinafter "LMP mark"). (Compl. ¶¶ 6–9, 11, 13, ECF No. 1; Am. Compl. ¶¶ 6–10, 12, 14, ECF

No. 46, Ex. A). My Pillow has used its registered trademark since 2009 and LMP has used its registered trademark since 2007. (Compl. ¶¶ 6–9, 11, 13; Am. Compl. ¶¶ 6–10, 12, 14).

In January 2012, My Pillow sued LMP in the United States District Court for the Eastern District of Michigan, alleging trademark infringement and unfair competition. (Compl. ¶ 16; Am. Compl. ¶ 15). The parties settled that lawsuit by entering into a settlement agreement establishing terms under which each party uses their respective marks. (Compl. ¶ 16; Am. Compl. ¶¶ 16–21).[1] The agreement contains the following provision: "The Parties agree that the [LMP mark], as used in the manner and form reflected in [the agreement], is not confusingly similar to and not likely to cause confusion with the My Pillow Mark." (Agreement § 1, Am. Compl. Ex. 4). The parties also agreed to the inverse: that the My Pillow mark is not confusingly similar to the LMP mark. (Agreement § 1). The agreement prohibits LMP from using the My Pillow mark in connection with pillows and from making any ad word purchase for the works "my" and "pillow," whether together or separate, unless accompanied by additional words. (Agreement § 2.1(c)). My Pillow likewise agreed not to purchase certain ad words related to the LMP mark. (Agreement § 4.1(c)).

My Pillow asserts that LMP violated the agreement and infringed the My Pillow mark. (Compl. ¶¶ 17–27; Am. Compl. ¶¶ 22–35). First, My Pillow alleges LMP purchased prohibited ad words without the accompaniment of additional words. (Compl.

---

[1] The lawsuit settled before discovery was completed and without any motion practice from the parties. (*See* Case No. 2:12-cv-10299 (E.D. Mich.)). Thus, no determinations were made on My Pillow's infringement claims or LMP's counterclaim contesting the validity of My Pillow's trademark.

¶¶ 18–22; Am. Compl. ¶¶ 23–29). My Pillow notified LMP of this asserted breach in December 2016. (Compl. ¶¶ 18–22; Am. Compl. ¶¶ 23–29). LMP claimed it ceased purchasing the prohibited words, but My Pillow asserts LMP continued prohibited ad word purchasing. (Compl. ¶¶ 18–22; Am. Compl. ¶¶ 23–29). Second, My Pillow alleges that LMP used the My Pillow mark in connection with My Pillow goods and made false representations about My Pillow in an email to a wholesale customer. (Compl. ¶¶ 23–24; Am. Compl. ¶¶ 30–32). Third, My Pillow claims that LMP produced radio advertisements in Minnesota that were designed to cause confusion between My Pillow and LMP. (Compl. ¶¶ 25–27; Am. Compl. ¶¶ 33–35). My Pillow informed LMP of these alleged breaches on December 20, 2017, then terminated the agreement on January 23, 2018. (Compl. ¶ 28; Am. Compl. ¶¶ 36–38). The next day, My Pillow brought suit, alleging six counts: breach of contract, trademark infringement in violation of the Lanham Act, unfair competition and false representation in violation of the Lanham Act, common-law trademark infringement and unfair competition, unfair competition and false representation in violation of the Minnesota Deceptive Trade Practices Act ("MDTPA"), and trademark cancellation. (Compl. ¶¶ 29–71).

LMP moved, *inter alia*, to dismiss My Pillow's original complaint. (ECF No. 11). My Pillow's breach of contract, common law unfair competition, Lanham Act unfair competition, and MDTPA unfair competition claims survived. (Sept. 6, 2018 Order, ECF

No. 39).² As will be discussed in greater detail, My Pillow's claims of trademark infringement under the Lanham Act and common law, false advertising/representation under the under the Lanham Act and MDTPA, and trademark cancellation were dismissed without prejudice. *Id.*

My Pillow now moves to amend its complaint. (ECF No. 43). My Pillow asserts its amendments would "correct the pleading issues identified in the [Sept. 6, 2018 Order]" and "add another federal trademark registration owned by My Pillow as a basis for trademark infringement." (ECF No. 45, at 1). LMP opposes, arguing the proposed amendments are futile, particularly in light of the Sept. 6, 2018 Order.

## II. ANALYSIS

### A. Legal Standard

A court should "freely give leave" to amend a pleading before trial when "justice so requires." Fed. R. Civ. P. 15(a). Parties "do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Leave to amend should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

² *Also found at My Pillow, Inc. v. LMP Worldwide, Inc.*, 331 F. Supp. 3d 920 (D. Minn. 2018). This published decision has no pagination, preventing precise citation. Therefore, this Court references the docket pagination of the Sept. 6, 2018 Order.

Relevant here, "[f]utility is a valid basis for denying leave to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.2d 748, 749 (8th Cir. 2005). "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal quotation marks omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

### B. Futility Analysis

#### 1. Amended Trademark Infringement Claim – Pillows

As the Court noted in the Sept. 6, 2018 Order, to prevail on its trademark infringement claims, My Pillow must prove it owns a registered trademark that LMP used or imitated in commerce in connection with the sale of goods, that LMP's use or imitation of the My Pillow mark was unauthorized, and that LMP's use or imitation is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); *ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 446 (8th Cir. 2018).[3]

---

[3] Courts analyze trademark infringement claims brought under the Lanham Act and common law under the same framework. *See DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003).

The Sept. 6, 2018 Order noted that, under the agreement, "LMP has rights to use the [LMP] Mark." (Sept. 6, 2018 Order, at 13) (alterations in original). While My Pillow claimed that LMP "continued to use the [LMP mark] contrary to the terms of the [agreement]," the complaint alleged no specific facts addressing this use. (Sept. 6, 2018 Order, at 13). The Order continued: "The complaint's only allegation pertaining to the LMP mark is a screen shot of LMP's website featuring the LMP mark and photographs of LMP pillows," but the Court noted that the "use of the LMP mark in the screen shot appears to be consistent with the agreement's example of permissible use of the LMP mark." (Sept. 6, 2018 Order, at 13–14). The Court found My Pillow failed to "explain how the use of the LMP mark in the screen shot is not authorized by the agreement." (Sept. 6, 2018 Order, at 14). The Court concluded that the "complaint fail[ed] to allege facts supporting a determination that LMP's use of the LMP mark was unauthorized." (Sept. 6, 2018 Order, at 14). The Court also noted that My Pillow argued that it is free to assert its trademark claims given that it terminated the agreement, but the Court found that argument had "no bearing on whether the Court applies the terms of the agreement to the parties' conduct during the agreement's duration" as "none of the conduct on which My Pillow relies occurred after the alleged termination of the agreement." (Sept. 6, 2018 Order, at 14 n.7). Thus, the Court dismissed My Pillow's Lanham Act and common law trademark infringement claims.[4]

---

[4] The Sept. 6, 2018 Order "decline[d] to address whether My Pillow has sufficiently alleged a likelihood of confusion" given that My Pillow had failed to allege facts supporting a determination that LMP's use was unauthorized. (Sept. 6, 2018 Order, at 14 n.8).

My Pillow attempts to remedy its trademark infringement claims by alleging that its termination of the agreement rescinded any authorization LMP had in using the LMP mark or the words "my" and "pillow" in connection with pillows. (Am. Compl. ¶¶ 52–55). It follows, My Pillow asserts, that LMP's continued use of the LMP mark following the agreement's termination infringed upon the My Pillow mark. (Am. Compl. ¶¶ 52–55). Moreover, My Pillow attempts to further buttress its claims by arguing that any conduct breaching the agreement constituted infringement. (Am. Compl. ¶ 52). While My Pillow avoids saying it outright, this claim essentially revives the Michigan federal litigation that the parties settled, returning the parties to their pre-settlement positions, albeit in a different federal court.

The question now before this Court is whether My Pillow has sufficiently addressed the concerns raised in the Sept. 6, 2018 Order regarding trademark infringement. This Court concludes it has. My Pillow now alleges that LMP has infringed on the My Pillow mark beyond the agreement's termination. This amended allegation is not through any real change of facts, however, but instead the mere passage of time. My Pillow terminated the agreement on January 23, 2018. Beginning then, My Pillow alleges, the agreement no longer controlled the parties' conduct, including the agreed-upon use of the LMP and My Pillow marks. Such an argument was essentially impossible in the original complaint because My Pillow rushed to file suit the day after it terminated the agreement.

Turning to the elements of trademark infringement, My Pillow has alleged it owns a registered trademark (the My Pillow mark), that LMP uses the LMP mark in selling its

pillows, that use of the LMP mark was no longer authorized because the agreement was terminated, and that use of the LMP mark is likely to cause confusion, cause mistake, or deceive. Neither party disputes that My Pillow registered the My Pillow mark or that LMP registered the LMP mark. As discussed in the preceding paragraph, My Pillow alleged that use was no longer authorized following the termination of the agreement.[5] This allegation is supported by a screen shot from LMP's website on September 11, 2018 showing sales of pillows and pillow cases with the LMP mark. (Am. Compl. ¶¶ 40–42, Ex. 5). Finally, My Pillow alleges likelihood of confusion between the My Pillow and LMP marks. This final allegation is supported by reference to a December 14, 2017 email from an LMP employee to a wholesale customer that includes the following language: "I've been with this company for 3 years and I can't tell you how many calls I get from customers wanting to return their My Pillow thinking we are the same." (Am. Compl. ¶ 31). This is sufficient factual content to push My Pillow's assertion of likelihood of confusion into plausibility and allows this Court to draw such an inference.

My Pillow's claim might not withstand further scrutiny as this case develops. As LMP argues, My Pillow has not alleged any facts as to how LMP is using the LMP mark in a manner inconsistent with each party's admission in the agreement that the parties' respective marks are not confusingly similar and not likely to cause confusion. Indeed, nothing is substantively different from My Pillow's screen shot considered by the Court

---

[5] My Pillow also asserts that given its termination of the agreement, *any* use by LMP of the LMP mark constituted infringement, even that occurring during the agreement's existence. This Court is not convinced, but it need not address this argument because the claim survives for the other reasons discussed herein.

in the Sept. 6, 2018 Order wherein it concluded the "use of the LMP mark in the screen shot appears to be consistent with the agreement's example of permissible use of the LMP mark" other than the fact that the use occurred *after* the termination of the agreement. Contrary to My Pillow's arguments, its admission regarding likelihood of confusion from the agreement may survive the cancellation of the agreement or at least weaken My Pillow's claims, either through estoppel or some other means. *See, e.g.*, *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1363 (C.C.P.A. 1973) ("Thus when those most familiar with use in the marketplace and most interested in precluding confusion enter agreements designed to avoid it, the scales of evidence are clearly tilted. It is at least difficult to maintain a subjective view that confusion will occur when those directly concerned say it won't."). But this Court's duty is to examine futility of the amendment based on the amendments themselves, not some underlying factual or evidentiary hurdle My Pillow may face, particularly where that inquiry involves a "case-by-case fact intensive analysis." *Amalgamated Bank of New York v. Amalgamated Trust & Sav. Bank*, 842 F.2d 1270, 1274 (Fed. Cir. 1988).[6] Such futility is not apparent from the face of the Amended Complaint and, with the record presently before the Court as well as the law of the case, this Court concludes My Pillow's amended trademark infringement claim would withstand a motion to dismiss. Accordingly, the amended trademark infringement claim is not futile and amendment should be granted.

---

[6] My Pillow is not precluded from bringing suit altogether. *See, e.g.*, *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 363–71 (5th Cir. 2004) (discussing the effect of the parties' consent-to-use agreement concerning trademark use on later trademark infringement claims).

## 2. Added Trademark Infringement Claim – Pillow Cases/Covers

Through the Amended Complaint, My Pillow seeks to add a new trademark infringement claim. (Am. Compl. ¶¶ 59–66). This claim is functionally identical to the previous trademark claim save for one change: it asserts infringement related to pillow cases rather than pillows.

My Pillow asserts that pillow cases were never covered by the agreement, thus rendering any use of the LMP mark on pillow cases for any period of time, including during the existence of the agreement, as trademark infringement. The Court need not decide this issue because as long as the pillow-based infringement claim survives, so follows the pillow case claim given that identical marks are at issue. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:56 (5th ed.) (classification of a product is irrelevant to infringement issues) (citing *Jean Patou, Inc. v. Theon, Inc.*, 9 F.3d 971975 (Fed. Cir. 1993)).

LMP makes an argument that the pillow cases at issue are actually pillow covers. These pillow covers, LMP argues, are sold as replacement parts for the core component of the underlying pillows, and this claim is subsumed by the other trademark infringement claim. My Pillows responds, noting that LMP's website originally identified the product as a pillow case and the customer reviews refer to the product as a pillow case. This dispute is not one resolved at the motion to amend stage. Rather, this is a factual dispute that must be resolved via the parties' discovery. Nonetheless, the true crux of the issue is the confusion between the My Pillow mark and the LMP mark. It matters not, for the futility analysis, whether the marks are used in connection with a pillow, a

pillow case, a pillow cover, or a tea kettle because the *marks* are at issue, not necessarily the items to which they are affixed.

Thus, as this Court concludes above, My Pillow's new trademark infringement claim would withstand a motion to dismiss. Accordingly, the new trademark infringement claim is not futile and amendment should be granted.

### 3. False Advertising Claim

In analyzing the original false advertising and false representation claims, the Court noted that to state a false advertising claim under 15 U.S.C. § 1125(a)(1)(B)[7], My Pillow

> must allege that (1) in a commercial advertisement, LMP made a false statement of fact about a product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of the statement's audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) LMP caused the false statements to enter interstate commerce; and (5) My Pillow was injured as a result of the false statement.

(Sept. 6, 2018 Order, at 17) (citing *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 (8th Cir. 2011)). My Pillow rested its claim "solely on a statement made by an employee to a wholesale customer in a private email." (Sept. 6, 2018 Order, at 18). The Court found this statement "was neither 'advertising' nor 'promotion'" constituting a commercial advertisement because the complaint did not allege the "statement was sufficiently disseminated or directed to the purchasing public." (Sept. 6, 2018 Order, at 18).

---

[7] The same analysis applies to unfair-competition and false-advertising claims arising under the Lanham Act and Minnesota law. *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999).

11

My Pillow attempts to salvage its false advertising/representation claims by adding the following: "On information and belief, LMP has made false and misleading statements comparing LMP and My Pillow and quoting unsubstantiated statistics regarding the sales, products, and customers of My Pillow and LMP to a substantial portion of the relevant purchasers in an effort to take sales away from My Pillow." (Am. Compl. ¶ 72).[8] My Pillow argues these additions explain

> its belief that the email it managed to get its hands on is part of a larger marketing campaign through which LMP employees communicate with the parties' customers and potential customers and quote unsubstantiated statistics regarding the sales, products, and customers of My Pillow and LMP in an effort to take sales away from My Pillow.

(ECF No. 45, at 13). Thus, the question before this Court is whether these additions are sufficient to overcome the original complaint's deficiencies. This Court concludes they are not.

The apparent additions in My Pillow's Amended Complaint were already presented to the Court when deciding the motion to dismiss. As My Pillow told the Court in arguing its motion:

> My Pillow's allegations aren't limited to a single e-mail. My Pillow alleges that LMP, through its employees and agents, has instructed its employees to falsely represent unsubstantiated statistics regarding the customers of My

---

[8] This allegation is accompanied by a nearly-identical factual allegation that reads:

> On information and belief, the aforementioned email is part of a larger marketing campaign through which LMP employees communicate, orally and in writing, with customers and potential customers of both My Pillow and LMP and falsely compare LMP to My Pillow and quote unsubstantiated statistics regarding the sales, products, and customers of My Pillow and LMP in an effort to take sales away from My Pillow.

(Am. Compl. ¶ 32).

> Pillow and LMP. *It's alleged a broader pattern of behavior* and it has cited this e-mail that was forwarded to My Pillow as an example of that behavior.

(June 5, 2018 Motions Hearing Tr. 51:1–8, ECF No. 54) (emphasis added). Despite this argument, the Court concluded that My Pillow still failed to state a claim. There is no substantive difference now between My Pillow's amended allegations to its previous argument. Despite My Pillow's arguments that this single email is enough to state a claim because it acts as an example for its allegation of a broader practice, the Court has already concluded otherwise.

My Pillow tries to distinguish its present claim of a broader pattern of behavior from its previous claim of a broader pattern by reason of the addition of "on information and belief" that the email is part of the larger marketing campaign. My Pillow relies on two cases to save its claim.

In *Eclat Pharm., LLC v. West-Ward Pharm. Corp.*, the court considered whether plaintiff pleaded a Lanham Act false advertising claim. 2014 WL 12597594, at *1 (C.D. Cal. Feb. 12, 2014). The complaint alleged defendants "made improper, affirmative statements as to having, or not being required to have, FDA approval of their products" in "connection with sales to purchasers of generic drugs, sales to GPOs and information available through Price Lists." *Id.* at *6. The plaintiff provided allegations as to each "category of activities." *Id.* The court, also analyzing the claims under Rule 9's fraud pleading requirements, found that the "[s]pecific details with respect to the content of the alleged misrepresentations, when they were made and by and to whom they were made are within the knowledge of each of the Defendants." *Id.* at *7. Thus, where a "claim is

13

that the communications were by Defendants to certain non-parties" it is "reasonable to conclude that Plaintiff does not have the same ready access to the details of the alleged communications, and that Defendants are not disadvantaged by less detailed allegations." *Id.*

In *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, the court also considered whether plaintiff pleaded a Lanham Act false advertising claim. 2017 WL 3129799, at *1 (S.D.N.Y. July 21, 2017). The defendant published a press release on its website touting the results of a comparative study relating to the parties' respective tissue wound care products. *Id.* at *1–*2. The plaintiff alleged the press release made two misrepresentations in that the statements made were unsupported by the underlying study. *Id.* at *2. In addition to the press release, defendant distributed a brochure to prospective customers, both in the U.S. and overseas, in which plaintiff alleged there were three false or misleading statements. *Id.* at *3. In moving to dismiss, defendant argued that plaintiff failed to allege facts demonstrating that the challenged statements were sufficiently disseminated to the purchasing public. *Id.* at *8. While the court noted the complaint "would have benefited from additional factual material on this point," it found "enough facts" were alleged to plausibly plead that the press release and brochure were sufficiently disseminated. *Id.* The court stated the complaint "need not allege all of the particular details identified by Defendant; indeed, many of those details would be difficult to ascertain absent discovery." *Id.* Instead, the question was "one of plausible pleading," finding that the complaint "contains sufficient facts to render plausible that the Press Release and the Brochure 'are part of an organized campaign to penetrate' the

14

wound biologics market." *Id.* Thus, the court found that the plaintiff adequately pled that the press release and brochure were sufficiently disseminated. *Id.*

These two cases do not save My Pillow's false advertising claim. In *Eclat*, plaintiff alleged that the defendants "enter into agreements with wholesale generic drug purchasers . . . for the purchase and distribution of their generic products . . ." and "[o]n information and belief . . . [Defendants] misrepresent that their unapproved . . . products comply with all relevant state and federal laws . . . ." 2014 WL 12597594, at *6. As already discussed, this "on information and belief" allegation was an example for just one of three categories of recipients of defendants' alleged misrepresentations. My Pillow has alleged no such categorization of widespread recipients, with examples supporting each. Rather, My Pillow has a single email related to a single group. The "on information and belief" allegations in *Mimedx* were that "since at least as early as October 2015, Defendant has been distributing, and is continuing to distribute the Brochure to prospective customers in the U.S. and abroad." 2017 WL 3129799, at *8 (quotation and alterations omitted). Despite publishing a press release on its website and distributing a brochure to potential customers both in the U.S. and overseas, the court opined that the complaint could have had *even more* factual material supporting the dissemination of the misrepresentations. My Pillow's allegations are scant compared to those in *Mimedx*. Again, My Pillow rests its entire claim on a single email to a single customer. This Court cannot conclude that the addition of "on information and belief" alters My Pillow's allegations to anything other than those already presented to and rejected by the Court in

15

the Sept. 6, 2018 Order. As such, My Pillow's false advertising claim is futile and the amendment shall not be permitted at this time.

To be sure, My Pillow is not barred from reasserting this claim in the future. Should information be found in discovery that shows the LMP email was in fact part of a larger campaign, My Pillow may seek to amend its complaint to revive this claim. Until then, the false advertising claim is not plausible on its face.

### C. Other Considerations

LMP does not make any arguments concerning undue delay, bad faith, dilatory motive, or unfair prejudice, nor does the Court independently find any. This case is in its infancy in that no answer has been entered and no pretrial scheduling order has issued. While this case was filed nearly one year ago, the parties have not progressed beyond the pleading stage by reason of their motion practice. Thus, while this Court is not enamored with the parties' lack of progress, it does not find any other considerations warranting denial of My Plillow's motion for leave to amend other than those discussed herein.

## III. CONCLUSION

It is not lost on this Court the futility of its own futility analysis. My Pillow believes its claims all have merit. If it did not, its lawyers would be violating their professional obligations. *See* Fed. R. Civ. P. 11. LMP has yet to even interpose an answer or response to My Pillow's amended complaint, but, given its resistance here, it will likely first move to dismiss the claims in similar fashion to the arguments considered

herein.[9] While this Court has expressed its skepticism, that skepticism is founded in a belief in *factual* futility rather than *legal* futility. While the parties posture against each other, legal fees will swell in an effort to overcome or reinforce this factual deficit. *See generally Select Comfort Corp. v. Baxter*, Case No. 12-cv-2899 (DWF/SER) (D. Minn.) (lawsuit initiated in 2012; 17-day jury trial held in 2017 with plaintiffs requesting over $17 million in damages, (*see* ECF No. 659, at 16), and the jury awarding approximately $155,000 to plaintiffs, (ECF No. 575); post-trial motions filed, with defendants seeking nearly $9 million in attorney's fees from plaintiffs, (ECF No. 632), and plaintiffs seeking over $5 millions in fees and costs from defendants, (ECF No. 640); and the court awarding neither fees nor costs to either party, (ECF No. 702)). These fees will be drawn from the warring companies' coffers, diverted from more practical business ventures such as actually competing in the open marketplace. Instead of competing on the quality of their products and the value offered to consumers, the parties instead capture the Court's resources while turning the courtroom into their competitive arena. The parties reached a compromise previously. There is no reason the parties cannot do so again. *See* ABA Model R. of P. Conduct 2.1 ("In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political

---

[9] This is not by fault of LMP, though, but rather a side effect of the bifurcation of duties found in the federal court system. This leads to interesting outcomes, wherein a magistrate judge decides the same arguments normally presented through a motion to dismiss so long as they happen to appear in opposition to a motion for leave to amend via futility challenges.

factors, that may be relevant to the client's situation."). Until then, the parties will retread over old paths, with a captured court acting as their arbiter.

Accordingly, based on all the files, record, and proceedings herein, and for the reasons stated above, Plaintiff's Motion for Leave to Amend its Complaint, (ECF No. 43), is **GRANTED IN PART and DENIED IN PART** as follows:

1. Plaintiff My Pillow is granted leave to amend to assert its proposed amended trademark infringement claim and added trademark infringement claim.

2. Plaintiff My Pillow is denied leave to amend to assert its proposed amended false advertising/representation claims.

3. Plaintiff My Pillow shall prepare and file an amended complaint, in sufficiently the same form as that attached to its motion, that complies with this Order.

Date: December 13, 2018

                *s/ Steven E. Rau*
                Steven E. Rau
                United States Magistrate Judge
                District of Minnesota

                *My Pillow v. LMP Worldwide*
                Case No. 18-cv-196 (WMW/SER)