UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

My Pillow, Inc.,                                    Case No. 18-cv-0196 (WMW/DTS)

Plaintiff,

v.                                          **ORDER GRANTING IN PART AND
                                            DENYING IN PART PLAINTIFF'S
LMP Worldwide, Inc.,                        MOTION TO DISMISS
                                            COUNTERCLAIMS**

Defendant.

---

Plaintiff My Pillow, Inc., commenced this trademark-infringement lawsuit against Defendant LMP Worldwide, Inc. (LMP) in January 2018. Currently before the Court is My Pillow's motion to dismiss six of LMP's nine counterclaims. (Dkt. 89.) For the reasons addressed below, My Pillow's motion is granted as to counterclaim counts IV and VII and denied as to counterclaim counts III, V, VI, and VIII.

## BACKGROUND

My Pillow is a Minnesota-based company that manufactures and sells pillows. My Pillow has used the registered trademark "MYPILLOW" (My Pillow mark) since 2009. The United States Patent and Trademark Office registered the My Pillow mark in April 2008 for use in connection with pillows (First Registration) and subsequently registered the My Pillow mark in March 2017 for use in connection with pillowcases and certain other goods (Second Registration). LMP has used the registered trademark *i ♥ my pillow* (the LMP mark) since 2007.

In January 2012, My Pillow commenced a lawsuit against LMP in the United States District Court for the Eastern District of Michigan alleging trademark infringement and unfair competition (Michigan lawsuit). The Michigan lawsuit ended when the parties signed a settlement agreement, which establishes the terms under which each party may use the marks at issue. The settlement agreement, which is governed by Michigan law, authorizes LMP to use the LMP mark with certain limitations. The settlement agreement also contains the following provision: "The Parties agree that the [LMP mark], as used in the manner and form reflected in [the agreement], is not confusingly similar to and not likely to cause confusion with the My Pillow Mark." After the parties executed the settlement agreement, the Michigan lawsuit was dismissed with prejudice.

My Pillow commenced this lawsuit in January 2018, alleging that LMP has violated the settlement agreement and infringed the My Pillow mark. In response, LMP asserts nine counterclaims against My Pillow.[1] My Pillow moves to dismiss Count III through Count VIII of LMP's counterclaims, which seek cancellation of the First Registration and the Second Registration of the My Pillow mark (Count III and Count IV), and allege that My Pillow engaged in false advertising in violation of the Lanham Act (Count V), violated the Minnesota Deceptive Trade Practices Act (Count VI), and engaged in unfair competition in violation of Minnesota law and Michigan law (Count VII and Count VIII).

---

[1]  In its answer, LMP labels two of its counterclaims as "Count III." As a result, the numbering of certain counts is off by one. To avoid confusion and remain consistent with the pleadings and the briefing, the Court uses the numbering reflected in LMP's answer, and any mention of "Count III" refers to the second "Count III" in the answer.

## ANALYSIS

My Pillow moves to dismiss Count III through Count VIII of LMP's counterclaims. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a claim must allege sufficient facts such that, when the facts are accepted as true, a facially plausible claim for relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether a claim is sufficient, a district court accepts as true all of the factual allegations in the claim and draws all reasonable inferences in favor of the nonmoving party. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010); *see also Reis v. Walker*, 491 F.3d 868, 870 (8th Cir. 2007) (applying Rule 12(b)(6) standard to motion to dismiss counterclaim). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Id*. at 555. And legal conclusions couched as factual allegations may be disregarded. *See id.*

### I. Cancellation of Trademark Registration (Count III and Count IV)

Count III and Count IV of LMP's counterclaims seek cancellation of the Second Registration and the First Registration of the My Pillow mark, respectively. In doing so, these counterclaims allege that the term "MYPILLOW" is generic or merely descriptive and, therefore, is not subject to trademark protection under the Lanham Act.

In any action that involves a registered trademark, a district court is authorized to "determine the right to registration, [or] order the cancelation of registrations, in whole or

in part." 15 U.S.C. § 1119. Generic terms may not be registered, "and a registered mark may be canceled at any time on the grounds that it has become generic." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) (citing 15 U.S.C. §§ 1052, 1064(c)). A court also may order cancellation of a trademark that is found to be invalid because the trademark is descriptive and has not acquired a secondary meaning. *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 711 F. Supp. 2d 991, 1006 (D. Minn. 2010).

### A. First Registration (Count IV)

Count IV of LMP's counterclaims seeks cancellation of the First Registration of the My Pillow mark. My Pillow argues that the dismissal with prejudice of this claim in the Michigan lawsuit precludes LMP from asserting the same claim here.

Claim preclusion bars a party from relitigating the same cause of action when three conditions are met: "there is a prior judgment rendered by a court of competent jurisdiction, that prior judgment was final and on the merits, and [the prior judgment] involved the same cause of action and the same parties or privies." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 669 (8th Cir. 2006). LMP asserted a counterclaim against My Pillow in the Michigan lawsuit seeking cancellation of the First Registration, and that counterclaim was dismissed with prejudice.[2] As a result, LMP is precluded from re-asserting that claim in this lawsuit.

For this reason, My Pillow's motion to dismiss Count IV of LMP's counterclaims, which seeks cancellation of the First Registration of the My Pillow mark, is granted.

---

[2] A district court may consider documents that, as is the case here, are necessarily embraced by the claim when considering a Rule 12(b)(6) motion to dismiss. *See Kushner v. Beverly Enters.*, 317 F.3d 820, 831 (8th Cir. 2003).

## B. Second Registration (Count III)

Count III of LMP's counterclaims seeks cancellation of the Second Registration of the My Pillow mark. My Pillow argues that LMP fails to state a claim for cancellation of the Second Registration because LMP's factual allegations pertain only to the use of the My Pillow mark in connection with pillows, which is not identified in the Second Registration.

Cancellation of a trademark registration may be sought "[a]t any time if the registered mark becomes the generic name *for the goods or services*, or a portion thereof, *for which [the mark] is registered.*" 15 U.S.C. § 1064(3) (emphasis added). Relying on this language in Section 1064(3), My Pillow contends that, to state a claim for cancellation of the Second Registration, LMP must allege with precision use of the My Pillow mark in connection with the specific goods or services identified in the Second Registration. But My Pillow does not cite any case law that supports the level of specificity in pleading that My Pillow's argument demands. And even if this level of specificity were necessary to state a claim for cancellation of trademark registration, the pleadings at issue here would be sufficient.

A party need not *prove* its case at the pleading stage. Pleadings do "not need detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555; *L.L. Nelson Enters., Inc. v. County of St. Louis*, 673 F.3d 799, 805 (8th Cir. 2012) (observing that "specific facts are not necessary" and pleadings "need only give the [opposing party] fair notice of what the claim is and the grounds upon which it rests" (internal quotation marks omitted)). Moreover, when evaluating the merit of a motion to

5

dismiss, a district court draws all reasonable inferences in favor of the nonmoving party. *Blankenship*, 601 F.3d at 853. Here, the Second Registration identifies the pertinent goods or services as "beds, mattresses, pillows for house pets, mattress toppers, thermo-shield mattress toppers[,] . . . pillow cases, bed sheets," and "retail mattress, pillow and bedding stores." Count III of LMP's counterclaims alleges that the My Pillow mark is generic or merely descriptive when used in connection with My Pillow's pillow business. And throughout the pleadings, both LMP and My Pillow refer to My Pillow's "business" and "products" both generally and with specific reference to products and services, including several of the products and services identified in the Second Registration. LMP has stated a claim for cancellation of the Second Registration.

Accordingly, My Pillow's motion to dismiss Count III of LMP's counterclaims, which seeks cancellation of the Second Registration of the My Pillow mark, is denied.

## II. False Advertising (Count V)

Count V of LMP's counterclaims alleges that My Pillow engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1). In particular, LMP alleges that My Pillow's advertising included false or misleading discount offers along with claims that its products were developed and endorsed by a "sleep expert," that its products could provide certain medical benefits, and that a sleep study proved these purported medical benefits.

Section 1125(a)(1) imposes liability on:

(1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination

6

> thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(B). My Pillow argues that LMP lacks constitutional and statutory standing and, alternatively, that LMP fails to state a false-advertising claim. The Court addresses each argument in turn.

### A. Standing

My Pillow argues that LMP lacks both constitutional and statutory standing to pursue its false-advertising claim. When a party "alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the [party] has Article III standing (constitutional standing) and whether the statute gives that [party] authority to sue (statutory standing)." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012). Because Article III standing presents a question of justiciability, it must be decided first. *Id.* Without Article III standing, a federal court has no subject-matter jurisdiction over the claim. *Id.*

#### 1. Constitutional Standing

Article III of the United States Constitution limits federal jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). As a jurisdictional prerequisite, standing must be established before the merits of a claim may be reached. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569

(8th Cir. 2007). If a federal district court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the claim. Fed. R. Civ. P. 12(h)(3). When standing is challenged, the party invoking federal jurisdiction must establish that the requirements of standing have been satisfied. *Mineta*, 495 F.3d at 569. A district court's determination of standing is based on the facts as they existed when the complaint was filed. *Lujan*, 504 U.S. at 569 n.4.

To satisfy the requirements of standing, a party must (1) allege to have suffered an injury in fact, (2) establish a causal relationship between the opposing party's conduct and the alleged injury, and (3) show that the injury would likely be redressed by a favorable decision. *Id.* at 560-61; *Mineta*, 495 F.3d at 569. Here, My Pillow argues that LMP has not sufficiently pled an injury in fact that is fairly traceable to My Pillow's alleged conduct with respect to LMP's false-advertising counterclaim.

An alleged "injury in fact" must be "concrete, particularized, and either actual or imminent." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (internal quotation marks omitted). A particularized injury affects the complaining party in a "personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotation marks omitted). And a "concrete injury . . . must actually exist," which means that the injury must be "real, and not abstract." *Id.* (internal quotation marks omitted). At the pleading stage, general factual allegations may be sufficient because courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Weiland v. U.S. Dep't of Health & Human*

*Servs.*, 793 F.3d 949, 954 (8th Cir. 2015) (alteration in original) (quoting *Lujan*, 504 U.S. at 561).

LMP alleges that it competes directly with My Pillow and that My Pillow's false and misleading advertisements have "damaged LMP's reputation and negatively impacted its sales," such as by "divert[ing] potential retailers and potential purchasers away from LMP's products," by "causing retailers and consumers to withhold trade from LMP," and by "inducing consumer, retailer, and wholesale customers to purchase My Pillow's pillows instead of LMP's pillows." As alleged, these injuries are neither "conjectural" nor "hypothetical," they are actual. *Lujan*, 504 U.S. at 560. These injuries also are particularized. They affected LMP's interests, not those of another entity or person. *See Spokeo*, 136 S. Ct. at 1548; *see also Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1024 (8th Cir. 2012) (concluding that alleged injury was particularized because it affected plaintiffs "personally and directly" as opposed to merely implicating a "public grievance"). And the loss of profits and reputational damage are concrete injuries; they are "real, and not abstract." *See Spokeo*, 136 S. Ct. at 1548. Thus, LMP has alleged an injury in fact sufficient to establish Article III standing.

A claimant also must allege an injury that is fairly traceable to the allegedly unlawful conduct and is not the consequence of the independent actions of a third party that is not before the court. *Lujan*, 504 U.S. at 560. Proximate causation is not required to establish Article III standing even if proximate cause is an element of the cause of action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Notably, the standing inquiry "is *not* . . . an assessment of the merits of a

plaintiff's claim." *Red River Freethinkers*, 679 F.3d at 1023 (emphasis added). Although an injury is not "fairly traceable" when it is the result of "the *independent* action of some third party not before the court, that does not exclude injury produced by [a] determinative or coercive effect upon the action of someone else." *Wieland*, 793 F.3d at 954 (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

LMP alleges that My Pillow engaged in false and misleading advertising that caused LMP to lose customers and sales and suffer reputational harm to its business. Although the causal chain in these allegations includes the independent action of third parties—namely, LMP's customers and prospective customers—the alleged injuries nonetheless are fairly traceable to My Pillow's alleged conduct. LMP essentially alleges that My Pillow's false and misleading advertising had a "determinative or coercive effect" on the actions of LMP's customers by diverting them (and their business) from LMP to My Pillow. *See Wieland*, 793 F.3d at 954. Therefore, LMP has alleged a causal connection between its alleged injuries and My Pillow's conduct that is sufficient to establish Article III standing.

My Pillow contends that LMP's allegations of harm and causation are too "conclusory" and "general" to establish standing. But this argument demands a level of specificity that is not required at the pleading stage. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish Article III standing, in contrast to the "specific facts" and evidentiary proof that are required at the summary-judgment and trial stages of a lawsuit, respectively. *See Lujan*, 504 U.S. at 561. My Pillow's arguments to the contrary lack merit.

Because LMP has Article III standing to advance its false-advertising claim, My Pillow's motion to dismiss on this ground is denied.

## 2. Statutory Standing

In contrast to Article III standing, which addresses "the constitutional power of a federal court to resolve a dispute," statutory standing requires the determination that "Congress . . . has accorded *this* injured plaintiff the right to sue the defendant to redress [the plaintiff's] injury." *Miller*, 688 F.3d at 934 (internal quotation marks omitted). To establish statutory standing under the Lanham Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales" and that the economic or reputational injury flowed "directly from the deception wrought by the [false] advertising." *Lexmark Int'l*, 572 U.S. at 131-32, 133. Allegations that the "deception of consumers causes them to withhold trade from the plaintiff" are sufficient to satisfy this legal standard. *Id.* at 133. But an individual or business consumer that is misled into purchasing an inferior product may not invoke the protection of the Lanham Act. *Id.* at 132. And the injury must directly harm the complaining party. For example, "while a competitor who is forced out of business by a defendant's false advertising" generally has statutory standing under the Lanham Act, "the same is not true of the competitor's landlord, its electric company, and other commercial parties" that may be injured as a remote, collateral consequence of the false advertising. *Id.* at 134.

Here, as addressed above, LMP alleges that My Pillow engaged in false and misleading advertising that resulted in LMP's loss of customers and sales along with reputational harm to LMP's business. LMP does *not* allege that it was harmed as a

*consumer* of My Pillow's products or as a collateral consequence of harm inflicted on another of My Pillow's competitors, both of which would be insufficient to establish statutory standing. *See id.* at 132-34. And notwithstanding My Pillow's demand for more detailed allegations of harm, LMP is not required to prove its damages at the pleading stage. *Id.* at 140; *cf. Lujan*, 504 U.S. at 561. LMP's allegations are sufficient to establish statutory standing under the Lanham Act.

Because LMP has statutory standing under the Lanham Act, My Pillow's motion to dismiss on this ground is denied.

### B. Failure to State a Claim

My Pillow also argues that LMP fails to state a false-advertising claim. To state a false-advertising claim under the Lanham Act, LMP must allege that (1) in a commercial advertisement, My Pillow made a false statement of fact about a product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of the statement's audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) My Pillow caused the false statement to enter interstate commerce; and (5) LMP was injured as a result of the false statement. *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 (8th Cir. 2011).

My Pillow primarily argues that LMP fails to allege that it was *injured* as a result of My Pillow's false statements. According to My Pillow, LMP's allegations are "unsupported, conclusory," and "threadbare" recitations of the injury element of a false-advertising claim that do not "allege any actual facts regarding lost sales, lost market share, lost goodwill, price erosion or any other actual, conceivable harm." But

allegations are, by definition, "unsupported" by proof at the pleading stage. *See Lexmark*, 572 U.S. at 140; *cf. Lujan*, 504 U.S. at 561. And LMP's allegations are not "conclusory" or "threadbare" recitals of the injury element of a false-advertising claim. LMP does more than merely allege that it was injured as a result of My Pillow's false advertising. LMP alleges that it suffered reputational harm and lost consumer, retail, and wholesale customers and sales as a result of My Pillow's false advertising. Contrary to My Pillow's arguments, these allegations are factual and, if proven, could entitle LMP to relief under the Lanham Act. To the extent that it is dissatisfied with the level of detail in the complaint, My Pillow provides no legal authority in support of dismissal on this basis. *See Twombly*, 550 U.S. at 555-56 (stating that a pleading "does not need detailed factual allegations" to survive a motion to dismiss and a party may rely on a "reasonable expectation that discovery will reveal evidence" to support allegations); *L.L. Nelson*, 673 F.3d at 805 (observing that "specific facts are not necessary" and a complaint need only provide "fair notice of what the claim is and the grounds upon which it rests" (internal quotation marks omitted)). LMP satisfies the governing pleading standard. My Pillow's argument that LMP fails to adequately plead the "injury" element of a false-advertising claim is unavailing.

My Pillow also argues that LMP fails to adequately plead the first element of a false-adverting claim, but only with respect to LMP's "sleep expert" and "medical benefits" allegations. A motion to strike under Rule 12(f) is the proper means to seek the removal of specific allegations from a pleading, rather than a motion to dismiss under

Rule 12(b)(6), which applies to the dismissal of entire claims.[3] *See, e.g.*, *Hill v. United States*, 751 F. Supp. 909, 910-11 (D. Colo. 1990). My Pillow's remaining arguments as to LMP's false-advertising counterclaim are limited to specific allegations underlying that counterclaim and do not support dismissal of the entire claim. The Court declines to address these arguments because, even if successful, they would not result in the dismissal of LMP's false-advertising counterclaim.[4]

In summary, My Pillow's motion to dismiss Count V of LMP's counterclaims, which alleges that My Pillow engaged in false advertising in violation of the Lanham Act, is denied.

### III. Deceptive Trade Practices Under Minnesota Law (Count VI) and Unfair Competition Under Michigan Law (Count VIII)

Count VI of LMP's counterclaims alleges that My Pillow engaged in deceptive trade practices in violation of Minnesota's Deceptive Trade Practices Act, Minn. Stat. § 325D.44. And Count VIII of LMP's counterclaims alleges that My Pillow engaged in unfair competition in violation of Michigan law.

Here, the Court applies the same analysis that applies to a false-advertising claim under the Lanham Act. *See AMD Southfield Mich. Ltd. P'ship v. Mich. Open MRI LLC*, 337 F. Supp. 2d 978, 981 (E.D. Mich. 2004); *see also Grp. Health Plan, Inc. v. Philip*

---

[3] A party may move to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading within 21 days after being served. Fed. R. Civ. P. 12(f). My Pillow made no such motion here.

[4] This same reasoning applies to My Pillow's argument that LMP fails to adequately plead the second and third elements of a false-advertising claim because that argument is directed only to a small part of the alleged false-advertising conduct.

*Morris, Inc.*, 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999). My Pillow's argument for dismissal of these state-law counterclaims merely incorporates by reference its argument for dismissal of LMP's false-advertising claim under the Lanham Act. My Pillow has not identified any independent basis that warrants dismissing these state-law counterclaims.

For the same reasons addressed above in Part II, My Pillow's motion to dismiss Count VI and Count VIII of LMP's counterclaims is denied.

### IV. Unfair Competition Under Minnesota Law (Count VII)

Count VII of LMP's counterclaims alleges that My Pillow violated Minnesota law by engaging in unfair competition.

"Under Minnesota law, unfair competition is not a tort with specific elements, . . . rather, it describes a general category of torts which courts recognize for the protection of commercial interests." *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1034 (D. Minn. 2003) (internal quotation marks omitted). Disparagement of a product or business is a tort that may serve as the basis for an unfair-competition claim. *See Imperial Developers, Inc. v. Seaboard Sur. Co.*, 518 N.W.2d 623, 627 (Minn. Ct. App. 1994). But if the underlying tort duplicates another claim, the unfair-competition claim must be dismissed. *Goddard*, 291 F. Supp. 2d at 1034 (citing *Zimmerman Grp., Inc. v. Fairmont Foods of Minn. Inc.*, 882 F. Supp. 892, 895 (D. Minn. 1994)). Here, LMP alleges that My Pillow disparaged LMP's products and business. But LMP's disparagement allegations are duplicative of LMP's allegations in support of its false-advertising claim. For this reason, LMP's claim for unfair competition under Minnesota law must be dismissed.

Accordingly, My Pillow's motion to dismiss Count VII of LMP's counterclaims, which alleges that My Pillow engaged in unfair competition in violation of Minnesota law, is granted.

**ORDER**

Based on the foregoing analysis and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff My Pillow, Inc.'s motion to dismiss counterclaims, (Dkt. 89), is **GRANTED** as to Defendant LMP Worldwide, Inc.'s counterclaim Count IV and counterclaim Count VII and **DENIED** in all other respects.

Dated: December 11, 2019              s/Wilhelmina M. Wright  
                                                                  Wilhelmina M. Wright  
                                                                  United States District Judge